CONDEC CORPORATION, Condec International Corporation, and Conval Corporation, Plaintiffs,

v.

William F. FARLEY, Farley Metals Inc. Employee Benefit Master Trust, Farley Industries, Inc., Farley Metals, Inc., John F. Farley, William H. Vrba, and the Northern Trust Company, Defendants.

No. 83 CIV 7223 (LBS).

United States District Court, S.D. New York.

Oct. 12, 1983.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiffs; Allen Kezsbom, Aaron Rubinstein, Richard A. DeSevo, New York City, of counsel.

Cleary, Gottlieb, Steen & Hamilton, New York City, for all defendants but The Northern Trust Co.; Edwin B. Mishkin, Judith A. Ripps, Neil P. Forrest, Mitchell A. Lowenthal, New York City, of counsel.

Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., for The Northern Trust Co.

## OPINION

SAND, District Judge.

Plaintiffs herein are Condec Corporation, a corporation incorporated under the laws of New York State whose shares are traded on the American Stock Exchange, and two of its wholly owned subsidiaries. Plaintiffs allege that defendant William Farley and other named defendants under his control violated New York's Security Takeover Disclosure Act, N.Y.Bus.Corp. §§ 1600–1614 (McKinney 1982 Supp.), by failing to file a registration statement pursuant to sections 1602 and 1603 of the Act after acquiring control of over 5% of Condec's publicly traded common stock.

Plaintiffs accordingly seek a temporary restraining order and preliminary injunction requiring the immediate filing of a registration statement and enjoining further purchases of Condec stock until the statement is filed. Plaintiffs further ask this Court to order defendants to divest themselves of "all stock purchased in violation of the statute." Plaintiffs' Memorandum at 20.

The procedural history of this application is somewhat unusual and is important to an understanding of the nature of this proceeding. When the parties first appeared before us in the federal court action, 83 CIV. 6932(LBS), it was on an Order to Show Cause why there should not be expedited discovery preliminary to plaintiffs' application for a preliminary injunction based on alleged violations of federal securities laws. The parties were in agreement that such discovery was appropriate. A hearing was scheduled for October 17th, 1983, to deal with the application for injunctive relief. Subsequently, plaintiffs initiated this action in state court, alleging solely violations of the New York Business Corporation Law and an application was made for a temporary restraining order. Defendants removed that case to this Court; a motion for remand has been denied and the two cases have been consolidated for all purposes.

For purposes of this proceeding, based only on the alleged violation of New York Business Corporation law, plaintiffs assert that they rely solely upon the facts disclosed in the 13D statement filed by the defendants. We proceed on the basis of the assumption that the 13D statement is true and accurate, and indeed, any contrary contentions based on matters outside the four corners of the 13D should properly await the October 17th hearing.

This application then is a renewal of the application for a temporary restraining order which was pending in the state court at the time of the removal. The issue which confronts the Court is whether, assuming the truthfulness of the 13D statement filed, the requirements for temporary injunctive relief on the state law claim have been satisfied, so that the plaintiffs should be granted this relief prior to consideration by the Court on October 17th of the application for a preliminary injunction predicated on the federal law violation.

We assume for the purposes of this application that plaintiffs have standing under the New York statute to assert a private right of action.[1] We further assume that plaintiffs have demonstrated that they will suffer "irreparable injury" if we do not grant the requested relief.[2] Passing these threshold considerations, we find, however, that plaintiffs have not established either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make a fair ground for litigation *and* a balance of hardships tipping decidedly in their favor. *See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979).

Thus, we decline to grant the extraordinary relief that plaintiffs seek.

## Likelihood of Success

The relevant facts for the purposes of this application are largely undisputed. As revealed by Schedule 13D statements filed with the Securities and Exchange Commission by defendant William Farley and submitted as exhibits by plaintiffs, defendants currently do control over 5% (in fact 8.7%) of Condec common stock. Defendants have not filed a registration statement with the New York Attorney General. We are asked to decide two issues: (1) whether defendants have violated the New York Takeover Disclosure Act and (2) whether

---

**1.** Although there appears to be no case law on the precise point, we believe this assumption is a reasonable one. Most of the Act's substantive provisions resemble the key provisions of the Securities Exchange Act of 1934, *see* 15 U.S.C. §§ 78j(b), 78m(d), 78n(a), (d) and (e), under which federal courts have recognized private rights of action. *See e.g., Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977); *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975); *J.I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). *GAF Corp. v. Milstein*, 453 F.2d 709, 719–20 (2d Cir.1971), *cert. denied*, 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972). New York State courts have generally followed the approach of the federal courts in determining whether an implied right exists, *see, e.g., Herzfeld v. Laventhol, Krekstein, Horwath & Horwath*, 378 F.Supp. 112, 130 (S.D.N.Y.1974), *aff'd in part, rev'd in part*, 540 F.2d 27 (2d Cir.1976); *Burns Jackson v. Lindner*, 88 A.D.2d 50, 59, 452 N.Y.S.2d 80, 86 (1982), *affirmed*, 59 N.Y.2d 314, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983) (*Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975) "reflective of New York law"); *Barnes v. Peat, Marwick, Mitchell & Co.*, 69 Misc.2d 1068, 332 N.Y.S.2d 281 (1972), *aff'd on this ground*, 42 A.D.2d 15, 344 N.Y.S.2d 645 (1973).

Defendants urge that the New York State Attorney General's central role as an enforcer of the New York statute argues against a private right of action. We see no reason why the Attorney General's role would preclude private enforcement. As in federal securities law, private action may be a "necessary supplement" to public enforcement. *J.I. Case Co. v. Borak*, 377 U.S. 426, 432, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964).

**2.** Irreparable injury has traditionally connoted "injury for which a monetary award cannot be adequate compensation." *Jackson Dairy, Inc. v. A.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). Given the New York statute's aim of protecting the State's industrial tax base and employment levels, *see* Plaintiffs' Memorandum of Law at p. 14, we believe that a failure to file statements required by the statute, which would delay the State Attorney General's inquiry into the possibility of migration of business outside the state, may well fall within the category of injuries for which money damages would not suffice.

the New York Takeover Disclosure Act has been preempted by federal securities law or violates the Commerce Clause of the United States Constitution. Because we find that defendants have not shown a violation of the New York statute, we do not reach the latter issue.

Our decision rests entirely on statutory construction. No relevant case law has been cited to us, nor are we aware of any. Section 1602 of the New York Security Takeover Disclosure Act provides:

No offeror shall make a takeover bid unless as soon as practicable on the date of commencement of the takeover bid he files with the attorney general at his New York city office and the target company a registration statement containing the information required by section sixteen hundred three of this article.

If defendants' stock purchases constitute a "takeover bid," they are clearly in violation of New York law, because no registration statement has been filed.

■ What, then, is a "takeover bid"? According to § 1601(a) of the Disclosure Act,

"Takeover bid" means the acquisition of or offer to acquire, pursuant to a tender offer or request of invitation for tenders, any equity security of a target company organized under the laws of this state or having its principal place of business and substantial assets within this state, if after acquisition thereof the offeror would, directly or indirectly, be a record or beneficial owner of more than five percent of any class of the issued and outstanding equity securities of such target company.

Plaintiffs argue that, under this definition, the acquisition *per se* of more than 5% of

any class of outstanding common stock of a "target company" constitutes a "takeover bid." Plaintiffs thus read the clause "pursuant to a tender offer or request ..." as applying only to the phrase "offer to acquire."[3]

An exception to the statutory definition provides the only support for plaintiffs' interpretation. Section 1601(b)(1) reads,

(b) "Takeover bid" does not include:

(1) Bids made by a dealer for his own account in the ordinary course of his business of buying and selling such security;

Plaintiffs argue that if the definition of "takeover bid" covered only acquisitions pursuant to tender offers and not acquisitions unaccompanied by tender offers, there would be no need for this exception— because a dealer in the ordinary course of business would not fall within the general definition.

■ While we agree with the general proposition that, in statutory construction, "[e]very word is to be given effect," Plaintiffs' Memorandum of Law at p. 6, the rule is not inflexible:

All parts of a statute must be harmonized with each other as well as with the general intent of the whole statute, and effect and meaning must, *if possible*, be given to the entire statute and every part and word thereof.

It is the duty of the court to harmonize conflicting provisions of a statute *if possible*, but if there is an irreconcilable conflict, the court must preserve the paramount intention although this may lead to the rejection of some subordinate and secondary provision.

N.Y. Statutes § 98 (McKinney 1971 and 1982 Supp.) (emphasis added). For the fol-

---

**3.** Defendants' future plans, as set forth in exhibits accompanying the affidavit of Aaron Rubinstein, counsel for plaintiffs, are irrelevant to the issue this Court now decides. Having no New York case law nor statutory definition of a "tender offer" to guide us, we conclude that a "tender offer" has not commenced. "[I]t is by now ... well settled that market purchases of stock, however aggressive, do not constitute a tender offer." *Kennecott Copper Corp. v. Cur-*

*tiss-Wright Corp.*, 449 F.Supp. 951, 961 (S.D.N.Y.), *aff'd on this ground*, 584 F.2d 1195 (2d Cir.1978). *See also Wellman v. Dickinson*, 475 F.Supp. 783, 823–24 (S.D.N.Y.1979), *affirmed*, 682 F.2d 355 (2d Cir.1982), *cert. denied*, ─ U.S. ──, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983) (listing "qualities that set a tender offer apart from open market purchases"); *Brascan, Ltd. v. Edper Equities, Ltd.*, 477 F.Supp. 773, 791 n. 13 (S.D.N.Y.1979) (same).

lowing reasons, we reject plaintiffs' interpretation of the "takeover" definition.

Preliminarily, we note that a definition of "takeover bid" that did not include the term "offer" would be somewhat unusual.[4] Defining a "bid" as an "acquisition" is clearly contrary to the plain meanings of the two terms.

In addition, plaintiffs, in basing their arguments on the meaning of exception § 1601(b)(1), have ignored two of the other three exceptions, both of which suggest that the definition covers only acquisitions pursuant to tender offers:

(b) "Takeover bid" does not include:

(2) An *offer to acquire* such equity security solely in exchange for other securities, or *the acquisition* of such equity security *pursuant to such offer*, for the sole account of the offeror, in good faith and not for the purpose of avoiding this section, and not involving any public offering of such other securities within the meaning of section four of title one of the "Securities Act of 1933", (48 Stat. 77, 15 U.S.C. § 77D(2)); as amended;

(3) Any other *offer to acquire* an equity security, or *the acquisition* of such security *pursuant to such offer*, for the sole account of the offeror, from not more than fifty persons, in good faith and not for the purpose of avoiding this section;

N.Y.Bus.Corp. § 1601(b)(2), (3) (McKinney 1983 Supp.) (emphasis added).

 Clearly these exceptions were intended to parallel in structure and meaning § 1601(a), the general definition. Plaintiffs' interpretation of § 1601(a), coupled with these exceptions, would result in curious statutory coverage. For example, acquisitions from fifty or fewer persons for

the purchasers' own account not "pursuant to such offer"[5] would be subject to the filing provision whereas such acquisitions pursuant to an offer for an offeror's "sole account" would not be.

A close examination of other sections of the Act further demonstrates the unsoundness of the plaintiffs' interpretation. Section 1603(a)(1), requiring an "offeror"—under § 1601(c), a person who makes or participates in making a "takeover bid"—to include in his registration statement proposed communications to offerees concerning "all information material to a decision to accept or reject the offer," plainly contemplates that § 1601 "takeover bids" would be accompanied by formal tender offers.[6] The open market buyer would scarcely propose to disclose to market sellers "all information material" in connection with a purchase. *See also* § 1604 (empowering Attorney General to conduct public hearing or investigation to determine "whether the offeror has provided full and fair disclosure to offerees of all material information concerning the takeover bid"). Moreover, former § 1602 required that an offeror "publish[ ] the terms of the proposed takeover bid." *See* N.Y.Bus.Corp. § 1602 (McKinney 1982) (citing former provision); *Great Western Corp. v. Kidwell*, 577 F.2d 1256, 1284 n. 57 (5th Cir.1978), *rev'd* on other grounds *sub nom. Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). Again, this requirement would be incongruous with an interpretation of § 1601 that encompassed open market purchases not pursuant to a tender offer. Section 1611, which proscribes only untrue statements and omissions of material facts "in connection with any tender offer ...," does not

---

4. We of course recognize that the function of a definition in a statute may be to impart a meaning into a commonly used term not otherwise present. We do not believe this occurred in this instance.

5. Clearly, the framers did not contemplate that all acquisitions would be made pursuant to offers, hence the use of the phrase "pursuant to such offer" in exceptions 1601(b)(2) and (3). A direction to one's broker to purchase shares in

the open market at a particular price would not be deemed an "offer."

6. Our reading is reinforced by the fact that § 1603(a)(1), which has no analog in 15 U.S.C. § 78m(d), closely resembles 15 U.S.C. § 78n(d)(1), a section of the Williams Act that operates only when a tender offer has been made.

say anything at all about acquisitions *not* pursuant to tender offers. Thus, one who purchases five percent of the securities in question in the open market must, according to plaintiffs, file a § 1603 registration statement, but would inexplicably not be subject to the strict prohibitions on misstatements and omissions contained in § 1611.

Finally, the legislative history of the Act convinces us that it was not aimed at mere open market acquisitions. As plaintiffs have amply demonstrated, "the New York State Legislature went to great lengths to insure that BCL Article 16 would not conflict with the Williams Act." *See* Plaintiffs' Memorandum of Law at 15–17 (quoting extensively from the legislative history of the Act and its amendments). Plaintiffs' interpretation of § 1601 would maximize the conflict with federal securities law. A burdensome filing requirement[7] and detailed enforcement scheme, permitting investigations, hearings, suspensions of stock purchasing, court injunctions, and punishment, would be called into play *immediately* (the statutory language is "as soon as practicable on the date of commencement") upon the mere purchase of more than five percent of the common stock of a corporation organized under New York State law. Even the Williams Act gives a purchaser ten days to make a Schedule 13D filing. *See* 15 U.S.C. § 78m(d)(1). While defendants' interpretation of § 1601 would not eliminate all possible conflict with federal securities law or burdens on interstate commerce, it clearly presents less serious problems under the supremacy and commerce clauses. State interests would mature only when an actual tender offer has been made. In sum, even if the statute were completely ambiguous—and we are satisfied this is not the case—defendants' interpretation is more reasonable in light of the Act's legislative history and recent developments in federal-state security regulation.

### Balance of Hardships

Although we assume *arguendo* that plaintiffs, raising an issue of statutory construction of first impression, have made out a "fair ground for litigation," they have not established that a balance of hardships tips decidedly in their favor. Indeed, seemingly content to rest on their showing of likelihood of success, plaintiffs have not even addressed this issue.

Our examination of the undisputed facts convinces us that the balance of hardships does not tip in plaintiffs' direction. A tender offer is not currently in progress. Even if a full hearing on the merits establishes that defendants should have filed a § 1603 statement, the effects of the failure to file are mitigated by the fact that defendants have filed a Schedule 13D statement with the SEC, the adequacy of which will soon be determined by this Court in the related action, 83 Civ. 6932. Thus, information about defendants' plans with respect to their Condec common stock purchases is currently available to investors. Moreover, expedited discovery has made additional information available to management. Though we appreciate plaintiffs' complaint that their future business plans are now clouded by uncertainty, granting the requested interim relief would hardly dissipate the uncertainty.

For the foregoing reasons, plaintiffs' request for a temporary restraining order or a preliminary injunction is denied with leave to renew at the October 17, 1983 hearing on the federal claims.

SO ORDERED.

---

**7.** The filing would not be a "carbon copy" of the 15 U.S.C. § 78m(d) filing. Subsections 1603(a)(1.) and (7.) do not have counterparts in the relevant provisions of the Williams Act.