08-5317-cv
Premium Mortgage Corp. v. Equifax Inc.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Argued: September 11, 2009      Decided: October 5, 2009
                                 Amended: October 14, 2009)

Docket No. 08-5317-cv

_____

PREMIUM MORTGAGE CORP., on behalf of itself and all others
similarly situated,

*Plaintiff-Appellant,*

–v.–

EQUIFAX, INC., a Georgia corporation, TRANS UNION LLC, a
Delaware limited liability company, EXPERIAN INFORMATION
SOLUTIONS, INC., an Ohio corporation, and EQUIFAX INFORMATION
SERVICES, LLC, a Georgia limited liability company,

*Defendants-Appellees,*

CREDIT PLUS, INC., a Maryland corporation, individually and as
a Representative of similarly situated defendants,

*Defendant.*

_____

Before:

PARKER and WESLEY, *Circuit Judges*, and RESTANI,<sup>*</sup> *Judge*.

Appeal from an order of the United States District Court for the Northern District of New York (Telesca, *J.*), entered on September 30, 2008, dismissing all claims against Equifax, Inc., Trans Union LLC, Experian Information Solutions, Inc., and Equifax Information Services, LLC.

AFFIRMED.

_____

LOUIS B. CRISTO, Trevett Lenweaver & Salzer P.C., Rochester, New York, *for Plaintiff-Appellant*.

MEIR FEDER, Jones Day, New York, New York (Christopher R. Lipsett and David Sapir Lesser, Wilmer Cutler Pickering Hale & Dorr LLP, New York, New York, David Cooper and Victoria Dorfman, Jones Day, New York, New York, Craig E. Bertschi and Cindy D. Hanson, Kilpatrick Stockton LLP, Atlanta, Georgia, *on the brief*), *for Defendants-Appellees*.

JAMES CHAREQ, Hudson Cook, LLP, Washington, DC, *for Amicus Curiae Consumer Data Industry Association*.

_____

PER CURIAM:

Plaintiff Premium Mortgage Corp. commenced this putative class action on behalf of itself and similarly situated mortgage lenders, bringing nine state-law claims against several consumer credit reporting agencies —

_____

<sup>*</sup>  The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

2

defendants Equifax Inc., Trans Union LLC, Experian Information Solutions, Inc., and Equifax Information Services, LLC (collectively, the "Credit Bureau defendants") — and Credit Plus, Inc. ("Credit Plus"), an intermediate "reseller" of consumer credit information. The United States District Court for the Northern District of New York (Telesca, *J.*), dismissed plaintiff's claims against the Credit Bureau defendants on preemption grounds, and granted plaintiff permission to file this partial appeal pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.[1]

## Background

Plaintiff's claims relate to defendants' sale of mortgage "trigger leads" to third-party lenders. Trigger leads are generated during the process by which mortgage brokers such as plaintiff evaluate consumer loan applications; according to plaintiff, these "leads" indicate that, "within the past 24 to 48 hours, a particular individual [has] expressed a desire to [a] mortgage bank" to obtain a loan. In order to assess an applicant's

---

[1] Credit Plus did not join the Credit Bureau defendants' motion to dismiss, it is not a party to this appeal, and plaintiff's claims against it remain pending in the district court.

creditworthiness after receiving a loan application, plaintiff purchases an aggregated credit report from an intermediate reseller of consumer credit information, such as Credit Plus. The reseller, in turn, purchases individual credit reports from each of the Credit Bureau defendants and bundles the information for use by plaintiff.

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1381 *et seq.* requires a mortgage broker seeking to purchase a credit report to disclose the reason for its purchase. As relevant in this case, plaintiff's requests for consumer credit reports are motivated by the fact that a consumer recently applied for a loan. The disclosure of this information to the reseller, and ultimately to the Credit Bureau defendants, generates a trigger lead.

The crux of this dispute is plaintiff's challenge to defendants' practice of permitting other lenders to purchase "pre-screened" consumer reports, *see* 15 U.S.C. § 1681b(c), (e), that, in essence, contain trigger leads. According to plaintiff, these trigger leads constitute its "proprietary customer information" because "such information is not readily known in the industry and it cannot be obtained except through extraordinary effort . . . ." However, the

4

prescreened reports in question use the information conveyed by a trigger lead as a screening criterion in order to generate a list of consumers who are in the market for mortgages and other loan facilities. The lenders purchasing these lists then compete with plaintiff and similarly situated mortgage brokers by offering terms on loans to the customers.

Based on these allegations, plaintiff brought nine state-law claims, including misappropriation of trade secrets, fraud, unfair competition, tortious interference "with contractual or prospective business relations," breach of contract "of which class members were intended beneficiaries," and unjust enrichment. The Credit Bureau defendants moved to dismiss plaintiff's claims against them, arguing that the claims are preempted by the FCRA, and, alternatively, that the allegations in the Amended Class Action Complaint (the "complaint") fail to state a claim. Judge Telesca granted the motion and held that the FCRA expressly preempts each of plaintiff's claims against the Credit Bureau defendants. Plaintiff appeals.

**Discussion**

We review *de novo* a district court's application of

5

preemption principles. *See, e.g., Drake v. Lab. Corp. of Am. Holdings*, 458 F.3d 48, 56 (2d Cir. 2006). "When addressing questions of express or implied pre-emption, we begin our analysis with the assumption that the historic police powers of the States are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Altria Group, Inc. v. Good*, 129 S. Ct. 538, 543 (2008) (internal quotation omitted). However, "[s]ince the existence of preemption turns on Congress's intent, we are to 'begin as we do in any exercise of statutory construction[,] with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs.'" *McNally v. Port Auth. of N.Y. & N.J.*, 414 F.3d 352, 371 (2d Cir. 2005) (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)).

Applying these standards, we affirm Judge Telesca's conclusion with respect to the bulk of plaintiff's state common-law claims. The operative provision of the FCRA for the purpose of this analysis is 15 U.S.C. § 1681t(b)(1)(A), which states: "[N]o requirement or prohibition may be

6

imposed under the laws of any State . . . with respect to *any subject matter* regulated under . . . subsection (c) or (e) of section 1681b of this title, *relating to* the prescreening of consumer reports . . . ." *Id.* § 1681t(b)(1)(A) (emphases added).[2]

Plaintiff's allegations "relate[] to the prescreening of consumer reports." *Id.* As plaintiff acknowledges, third-party lenders obtain trigger leads from the Credit Bureau defendants by purchasing prescreened consumer reports. *See id.* § 1681b(c), (e). Trigger leads are simply one of the constituent parts of these "consumer report[s]." *Id.* § 1681a(d)(1). Consequently, plaintiff's claims fall within § 1681a(d)(1), irrespective of whether the allegations in the complaint focus more narrowly on the resulting uses of the trigger lead information obtained through this practice. Therefore, there is no merit to plaintiff's argument that its claims are not preempted because the trigger leads themselves are not "consumer reports" under the FCRA.

---

[2] Because Judge Telesca's analysis was based on § 1681t(b)(1)(A), any perceived tension between 15 U.S.C. § 1681h(e) and § 1681t(b)(1)(F), *see, e.g.*, *Prakash v. Homecomings Fin.*, No. 05 Civ. 2895, 2006 WL 2570900, at *5-7 (E.D.N.Y. Sept. 5, 2006), is of no moment in this appeal.

7

Plaintiff's distinction between statutory and common-law claims under this section of the FCRA's express preemption provision is likewise unpersuasive. "The phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521 (1992) (plurality opinion); *see also Riegel v. Medtronic, Inc.*, 128 S. Ct. 999, 1007-08 (2008). The complaint makes clear that plaintiff's common-law claims are predicated on the existence of a duty — allegedly owed by defendants to mortgage brokers such as plaintiff — to keep confidential the fact that a consumer has recently applied for a mortgage. The terms used by Congress in § 1681t(b)(1)(A) require that such an obligation must yield to the FCRA under the Supremacy Clause. Therefore, plaintiff's common-law claims for misappropriation of trade secrets, unfair competition, and unjust enrichment were properly dismissed.

Relying on *Cipollone*, plaintiff argues that its sixth and seventh causes of action (for breach of contract and

8

tortious interference with contract, respectively) are not preempted because they are "based, in whole or in part, upon contractual obligations." *See Cipollone*, 505 U.S. at 526 (plurality opinion) ("[A] common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 'requirement . . . imposed under State law' . . . ." (emphasis omitted)); *but see id.* at 551 (Scalia, J., concurring in the judgment in part and dissenting in part) ("When liability attaches to a particular promise or representation, it attaches *by law*."). Similarly, plaintiff asserts that its fraud claim evades preemption under *Good* and *Cipollone* because the claim, in plaintiff's view, is based on a "more general duty not to make fraudulent statements." *Good*, 129 S. Ct. at 549; *see also Cipollone*, 505 U.S. at 529 (plurality opinion). However, in their motion to dismiss and again in this appeal, the Credit Bureau defendants also argue that plaintiff's claims are inadequately pleaded. For the reasons discussed below, we agree. Therefore, we decline to reach plaintiff's preemption argument as to these causes of action and affirm the decision below on this properly preserved alternative

9

ground.  *See, eg., Palmer v. Occidental Chem. Corp.*, 356 F.3d 235, 236 (2d Cir. 2004).

In New York, the elements of a claim for tortious interference with a contract include, *inter alia*, "the existence of a valid contract between the plaintiff and a third party," and an "intentional procurement of the third-party's breach of the contract without justification . . . ."  *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424, 668 N.E.2d 1370, 1375 (N.Y. 1996).[3]  "Tortious interference with prospective economic relations requires an allegation that plaintiff would have entered into an economic relationship but for the defendant's wrongful conduct."  *Vigoda v. DCA Prods. Plus Inc.*, 741 N.Y.S.2d 20, 23 (1st Dep't 2002).

The complaint fails to sufficiently plead these elements.  Plaintiff has not identified the legal basis for the Credit Bureau defendants' alleged "duty and obligation

---

[3]  Although we need not resolve the application of the relevant preemption reasoning in *Cipollone*, which related to a claim for "breach of an express warranty," 505 U.S. at 525, we note in passing that a claim for "tortious interference with contract" is, as its name indicates, a tort that encompasses interfering with an existing contract.  Such a claim — not based on a breach of any contract — would appear to impose a state-law "requirement," 15 U.S.C. § 1681t(b)(1)(A), under *Cipollone* because the plaintiff seeks not to enforce a set of mutual promises between private parties but rather to sanction an act by a non-party that allegedly impaired those promises.

10

to maintain the confidentiality" of trigger leads, and there are no allegations in the complaint capable of supporting a reasonable inference that any Credit Bureau defendant "acted with the *sole purpose* of harming the plaintiff or used dishonest, unfair, or improper means," *Nadel v. Play-By-Play & Novelties, Inc.*, 208 F.3d 368, 382 (2d Cir. 2000) (emphasis added). Plaintiff's allegations of tortious interference with *prospective* business relations are even more attenuated. Therefore, the allegations in support of plaintiff's sixth cause of action are insufficient as a matter of law.

Plaintiff's seventh cause of action is also defective. A non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that "clearly evidence[] an intent to permit enforcement by the third party" in question. *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,* 66 N.Y.2d 38, 45, 485 N.E.2d 208 (1985). The complaint presents only conclusory allegations as to this element, and we find them facially implausible.

Finally, plaintiff's fraud claim is also inadequately pleaded. The elements of fraud under New York law are: "[1]

11

a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury." *Lama Holding*, 88 N.Y. 2d at 421.  In a federal diversity action, such a claim must be pleaded with particularity. *See* Fed. R. Civ. P. 9(b).  Plaintiff failed to identify misrepresentations or material omissions by any Credit Bureau defendant, and the complaint provides no basis to support an inference of justifiable reliance.  "Allegations that are conclusory or unsupported by factual assertions are insufficient."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  Therefore, we affirm the dismissal of plaintiff's fraud claim because it is inadequately pleaded.

Plaintiff's fourth, sixth, and seventh causes of action present little more than "unadorned, the-defendant[s]-unlawfully-harmed-me accusation[s]."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  These allegations are insufficient to state a claim upon which relief may be

12

granted.  Therefore, we affirm the dismissal of plaintiff's fourth, sixth, and seventh causes of action on this alternative ground.

## Conclusion

The Court has reviewed plaintiff's remaining arguments and finds them to be without merit.  Accordingly, the district court's order of September 30, 2008 is hereby AFFIRMED.

13