Scott **CARRUTHERS,** Plaintiff,

v.

**AMERICAN HONDA FINANCE CORPORATION,**
**Defendant.**

**Case No. 4:10cv7–RH/WCS.**

United States District Court,
N.D. Florida,
Tallahassee Division.

June 3, 2010.

**1252**

Douglas S. Lyons, Lyons & Farrar PA, Tallahassee, FL, for Plaintiff.

Daniel J. Kissane, David Andrew Cornell, Cole Scott & Kissane PA, Jacksonville, FL, for Defendant.

## ORDER DISMISSING THE COMPLAINT AND GRANTING LEAVE TO AMEND

ROBERT L. HINKLE, District Judge.

The plaintiff leased an automobile from the defendant. At the end of the term, the plaintiff surrendered the car. The defendant found minor damage and sent the plaintiff a bill for the cost of repair. The plaintiff refused to pay, invoking a specific lease provision dealing with minor damage. While the dispute was ongoing, the defendant reported the nonpayment to a consumer-reporting agency, damaging the plaintiff's credit.

The plaintiff filed this lawsuit, asserting claims under the federal Fair Credit Reporting Act and state law. The plaintiff cannot recover under the Fair Credit Reporting Act because it does not allow an individual to recover against a furnisher of credit information in circumstances like these. And the Act preempts state-law claims of this kind. This order grants the defendant's motion to dismiss the complaint for failure to state a claim on which relief can be granted.

## I. Facts

For purposes of a motion to dismiss, the complaint's factual allegations, though not its legal conclusions, must of course be accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. ——, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

According to the complaint, the plaintiff Scott Carruthers leased an automobile from the defendant American Honda Financing Corporation ("Honda"). Mr. Carruthers timely made all payments. At the end of the term, he surrendered the car. Honda identified multiple dents. The lease provided that Mr. Carruthers was not liable for damage "caused by one or more single events, each of which [cost] less than $500 to repair, up to a maximum of $1,500 waived." Compl. (document 1–1) at ¶ 11.

Honda's position was that the dents were sustained during a single event and that the repair cost was $763.45. It sent Mr. Carruthers a bill for that amount. Mr. Carruthers responded with a memorandum asserting that the dents were sustained on separate occasions, relieving him of responsibility for the repair cost.

Although it received the memorandum, Honda sent Mr. Carruthers a letter claiming that he had failed to respond to the bill. Mr. Carruthers sent Honda a second

memorandum pointing out that he had in fact responded to the bill, not only by submitting the first memorandum but also during several phone conversations with Honda agents. Mr. Carruthers' second memorandum also warned that "any credit report filed by [Honda] claiming that [his] account was past due would be considered false and defamatory." Compl. at ¶ 14.

Honda was unmoved. It filed an adverse credit report. The complaint alleges that this damaged Mr. Carruthers' reputation for creditworthiness, led to a reduction in his credit lines, and resulted in the cancellation of a credit card. *See* Compl. at ¶ 49.

## II. Proceedings

Mr. Carruthers asserts claims under the federal Fair Credit Reporting Act, the Florida Deceptive and Unfair Trade Practices Act, the Florida Consumer Collection Practices Act, and Florida common law. The common-law claims are for defamation, tortious interference, negligence, and breach of contract.

Honda has moved to dismiss for failure to state a claim on which relief can be granted. Mr. Carruthers opposes the motion but asserts that if it is granted, he should be given leave to file an amended complaint.

## III. The Fair Credit Reporting Act

The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*—sometimes referred to in this order as "the Act" or "the FCRA"—uses the term "consumer-reporting agency" to refer to a company whose business consists of compiling credit information on individuals. The Act refers to companies that furnish credit information to consumer-reporting agencies as "furnishers." Honda is a furnisher.

■ Section 1681s–2 of the Act regulates furnishers. In essence, subsection (a) requires furnishers to make sure the information they submit to consumer-re-porting agencies is accurate, and subsection (b) provides that, once a furnisher receives notice of a dispute *from a consumer-reporting agency,* it must "conduct an investigation with respect to the disputed information" and report any inaccuracies.

The complaint fails to state a claim on which relief can be granted under either subsection.

Subsection (a) creates no private right of action; only certain state and federal officials may enforce the subsection. *See Peart v. Shippie,* 345 Fed.Appx. 384, 386 (11th Cir.2009); *see also Chiang v. Verizon New England, Inc.,* 595 F.3d 26, 36 (1st Cir.2010); *Riley v. GM Acceptance Corp.,* 226 F.Supp.2d 1316, 1319 (S.D.Ala.2002) ("There is no private cause of action under 15 U.S.C. § 1681s–2(a)").

Subsection (b) creates a private right of action, but the subsection applies by its plain terms only when the furnisher receives notice of a dispute *from a consumer-reporting agency. See Chiang,* 595 F.3d at 35–36 & n. 8; *Peart,* 345 Fed. Appx. at 386; *see also Green v. RBS Nat'l Bank,* 288 Fed.Appx. 641, 642 (11th Cir. 2008) ("The [FCRA] does provide a private right of action for a violation of § 1681s–2(b), but only if the furnisher received notice of the consumer's dispute from a consumer reporting agency."). According to the complaint, Honda received notice of Mr. Carruthers' dispute from Mr. Carruthers himself, not from a consumer-reporting agency.

The complaint thus fails to state a claim under the FCRA on which relief can be granted. In response to the motion to dismiss, Mr. Carruthers has conceded this.

## IV. State–Law Claims

The state-law claims all seek to hold Honda liable for filing the adverse credit report. In subsection A, this order con-

cludes that the state-law claims are preempted under the plain language of an FCRA provision adopted in 1996. In subsection B, the order addresses a more limited preemption provision adopted in 1970. In subsection C, the order addresses the three approaches courts have taken to reconciling the 1996 and 1970 provisions, and the order concludes that the 1996 provision should be applied in full, just as it is written.

### A. The 1996 Preemption Provision

■ Mr. Carruthers' state-law claims fail because the FCRA preempts state-law claims of this kind. The Act provides:

No requirement or prohibition may be imposed under the laws of any State ... with respect to any subject matter regulated under ... section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies.

15 U.S.C. § 1681t(b)(1)(F). The subsection expressly exempts two state statutes from its reach, but the exemptions do not apply here.

The subsection was added to the Act in 1996. It is clear and unequivocal. It means what it says. Mr. Carruthers' state-law claims rise or fall on the assertion that Honda violated a duty imposed by state law and may be held liable for doing so. But this subsection prohibits a state from imposing such a duty.

■ To be sure, breach-of-contract claims ordinarily are not preempted. The subsection says that "no requirement or prohibition may be *imposed under the laws of any State* ... relating to the responsibilities of" furnishers. 15 U.S.C. § 1681t(b)(1)(F). In *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), four justices concluded that "a common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 're-

quirement ... *imposed under state law.*' " *Id.* at 526, 112 S.Ct. 2608 (discussing express-warranty claims) (emphasis in original). In *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183 (11th Cir. 2004), the Eleventh Circuit adopted this view. *See id.* at 1191–93 & n. 4; *see also Leet v. Cellco P'ship*, 480 F.Supp.2d 422, 431–32 (D.Mass.2007) (holding a breach-of-contract claim not preempted by § 1681t(b)(1)(F)).

■ Mr. Carruthers asserts a breach-of-contract claim. But he does not allege that Honda violated a specific term of the contract, that is, of the lease agreement. He alleges, instead, that Honda violated the "covenant of good faith and fair dealing [implied] in every contract under Florida law." Compl. at ¶ 115. Under *Cipollone* and *Spain*, voluntarily-assumed contractual duties are not "imposed under state law." But the duty of good faith and fair dealing is. One does not voluntarily assume the duty of good faith and fair dealing. It is implied by law "to protect ... reasonable expectations." *Cox v. CSX Intermodal, Inc.*, 732 So.2d 1092, 1097 (Fla. 1st DCA 1999); *see also County of Brevard v. Miorelli Eng'g, Inc.*, 703 So.2d 1049, 1050–51 (Fla.1997).

This conclusion is consistent with the Eleventh Circuit's decision in *Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir.1993). There the court addressed whether the implied warranty of merchantability comes within *Cipollone*'s voluntarily-assumed-duty exception. The court said that it did not:

Although liability for breach of an *express* warranty may be viewed as imposed by the warrantor, liability for breach of an *implied* warranty is based on the agreement, *imposed by law*, to be responsible in the event the thing sold is not in fact fit for the use and purposes intended.... If [the defendant] were to

have liability for breach of an *implied* warranty of merchantability, that liability would not be self-inflicted. Instead, that liability would be based on a requirement imposed by state law.

*Id.* at 519–20 (internal citations and punctuation omitted); *accord Taylor AG Indus. v. Pure–Gro,* 54 F.3d 555, 563 (9th Cir. 1995) (applying *Papas* to the implied warranty of fitness for a particular purpose). The same is true here. The duty of good faith and fair dealing—like the implied warranty of merchantability—is implied by law, not voluntarily assumed.

In sum, under the 1996 preemption provision, all of Mr. Carruthers' state-law claims, including the claim that Honda violated the duty of good faith and fair dealing, are preempted.

### B. The 1970 Preemption Provision

The 1996 preemption provision would end the matter but for an earlier, more limited preemption provision. Adopted in 1970 as part of the original FCRA, the more limited provision is this:

> [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, *or any person who furnishes information to a consumer reporting agency,* based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report[,] *except as to false information furnished with malice or willful intent to injure such consumer.*

15 U.S.C. § 1681h(e) (emphasis added). Mr. Carruthers asserts that Honda acted with malice, saving his claim from preemption under this provision.

### C. Reconciling the Provisions

If the 1996 preemption provision— § 1681t(b)(1)(F)—preempts all state-law claims against furnishers, then the furnisher-liability clause in the more limited, 1970 preemption provision— § 1681h(e)—is superfluous. *See, e.g., Manno v. Am. Gen. Fin. Co.,* 439 F.Supp.2d 418, 424 (E.D.Pa. 2006). Giving the 1996 provision its full effect thus runs afoul of the canon of construction under which every provision of a statute should be given effect if possible. *See, e.g., Hibbs v. Winn,* 542 U.S. 88, 101, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004) (discussing the "rule against superfluities"). Courts have dealt with the two preemption provisions in three ways. This order addresses each in turn.

#### 1. The Statutory Approach

The first solution to the superfluity problem is known as the "statutory" approach. On this view, the 1996 provision— under which no state-law "requirement or prohibition" may be imposed on furnishers—preempts only statutory claims, not common-law claims. *See, e.g., McCloud v. Homeside Lending,* 309 F.Supp.2d 1335, 1341–42 (N.D.Ala.2004). Courts taking this view focus on the phrase "requirement or prohibition," and conclude that a common-law duty is not a "requirement or prohibition." *See Manno,* 439 F.Supp.2d at 426. There are three major problems with the statutory approach.

First, and most importantly, it is at odds with Supreme Court precedent. In *Cipollone,* the Court interpreted a similar preemption statute and concluded that a "requirement or prohibition ... imposed under State law" includes a common-law duty. 505 U.S. at 521–23, 112 S.Ct. 2608 (plurality opinion); *id.* at 548–49, 112 S.Ct. 2608 (Scalia, J., joined by Thomas, J., concurring in judgment in part and dissenting in part); *see also Riegel v. Medtronic,*

*Inc.*, 552 U.S. 312, 324, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008) ("Absent other indication, reference to a State's 'requirements' includes its common-law duties.... [C]ommon-law liability is 'premised on the existence of a legal duty,' and a tort judgment therefore establishes that the defendant has violated a state-law obligation.") (quoting *Cipollone* ); *Papas,* 985 F.2d at 518 (same). Indeed, the Second Circuit recently rejected the statutory approach in a case involving a different subsection of § 1681t(b)(1). As the court put it: "The phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules." *Premium Mortgage Corp. v. Equifax, Inc.,* 583 F.3d 103, 106 (2d Cir.2009) (citing *Cipollone* and *Medtronic* ). The statutory approach lacks a footing in the text of § 1681t(b)(1)(F).

Second, the legislative history suggests that in passing § 1681t(b)(1)(F), Congress's main goal was to establish uniform regulations for furnishers. *See* Michael Epshteyn, Note, *The Fair and Accurate Credit Transactions Act of 2003: Will Preemption of State Credit Reporting Laws Harm Consumers?,* 93 Geo. L.J. 1143, 1160–62 (2005) (collecting the legislative history); *see also* 123 Cong. Rec. H8122–02 (2003) (discussing the preemption provisions passed in 1996). If uniformity was indeed Congress's main goal, then the statutory approach makes no sense. Statutory claims and common-law claims are equally capable of frustrating uniformity. *See* Robert M. Ackerman, *Tort Law and Federalism: Whatever Happened to Devolution?,* 14 Yale L. & Pol'y Rev. 429, 452–53 (1996) (arguing for the nationalization of products-liability law).

Third, because Congress enacted § 1681t(b)(1)(F) in 1996—four years after

*Cipollone* was decided—it presumably knew that the phrase "requirement or prohibition" would be construed to include common-law duties. *See, e.g., Edelman v. Lynchburg College,* 535 U.S. 106, 116–117 & n. 13, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002). Thus the statutory approach avoids violating the rule against superfluities only by disregarding the well-established presumption that Congress is "aware of relevant judicial precedent" when it enacts statutes. *Merck & Co. v. Reynolds,* —— U.S. ——, 130 S.Ct. 1784, 1795, 176 L.Ed.2d 582 (2010).

The statutory approach is unfounded.

### 2. *The Temporal Approach*

The second solution to the superfluity problem is referred to as the "temporal approach." Under it, state-law claims against a furnisher that arise *after* the furnisher receives notice of a dispute are categorically barred by § 1681t(b)(1)(F), whereas the availability of state-law claims arising *before* the furnisher receives notice is governed by § 1681h(e). *See, e.g., Aklagi v. Nationscredit Fin.,* 196 F.Supp.2d 1186, 1195–96 (D.Kan.2002). Under this approach, therefore, state-law claims arising *after* the furnisher receives notice of a dispute are totally barred, but claims arising *before* the furnisher receives notice may proceed, so long as the plaintiff can surmount § 1681h(e)'s limits on furnisher liability. *See id.*

■ The temporal approach suffers from two fatal flaws. First, because § 1681t(b)(1)(F) preempts state-law claims "with respect to any subject matter regulated under ... section 1681s–2," the temporal approach assumes that the duties imposed under § 1681s–2 do not kick in until after the furnisher is on notice of a dispute. But that is not so. Section 1681s–2(a)(1)(A), for example, prohibits furnishers from giving consumer-reporting

agencies information that the furnisher "knows or has reasonable cause to believe ... is inaccurate." A furnisher that knowingly gives inaccurate information to a consumer-reporting agency violates this provision, regardless of whether the furnisher was on notice of a dispute when it sent the information. *See, e.g., Wolfe v. MBNA Am. Bank,* 485 F.Supp.2d 874, 885 (W.D.Tenn.2007) (concluding that the temporal approach is "circular and flawed").

The second problem with the temporal approach is that it produces an irrational result. As the Northern District of Georgia has explained:

> [T]he practical effect [of the temporal approach is] troubling. The newer statute, [§ 1681t(b)(1)(F) ], provides furnishers of information with much greater protection (potentially no lawsuits) than does the older statute, § 1681h(e) (allowing defamation actions premised on malice or willfulness). [The temporal approach] has the effect of giving a furnisher of information more protection from exposure to liability for acts committed after receiving notice of [a] dispute than for acts committed before such notice. It seems odd ... that Congress intended to protect furnishers ... more once they have knowledge that a consumer is disputing an item on his credit report; one would, logically, expect the opposite policy.

*Johnson v. Citimortgage, Inc.,* 351 F.Supp.2d 1368, 1374–75 (N.D.Ga.2004) (internal citations omitted).

In sum, the temporal approach fails because, like the statutory approach, it finds no support in the statutory text, and because it produces an irrational result.

### 3. *The Total–Preemption Approach*

The last approach to reconciling the 1996 and 1970 provisions is called the "total-preemption" approach. It holds that the 1996 provision means what it says and

thus preempts any state-law claim against a furnisher arising from a requirement or prohibition imposed by state law, regardless of whether the claim is derived from statutory or common law, and regardless of when the claim arose. *See, e.g., Hasvold v. First USA Bank,* 194 F.Supp.2d 1228, 1239 (D.Wyo.2002); *Jaramillo v. Experian Info. Solutions, Inc.,* 155 F.Supp.2d 356, 361–63 (E.D.Pa.2001).

Unlike the statutory approach, the total-preemption approach rightly holds that state-law "requirements or prohibitions" include common-law duties. *See Cipollone,* 505 U.S. at 523, 112 S.Ct. 2608; *Medtronic,* 552 U.S. at 324–25, 128 S.Ct. 999. And unlike the temporal approach, the total-preemption approach does not make arbitrary distinctions based on whether the defendant-furnisher was on notice of a dispute at the time it disclosed the information.

To be sure, the total-preemption approach does run afoul of the "rule against superfluities," *Hibbs,* 542 U.S. at 101, 124 S.Ct. 2276, by rendering the furnisher-liability clause in the 1970 provision superfluous. But while the rule against superfluities is a helpful tool of statutory interpretation, it is not an inexorable command, and it need not be followed at all costs. *See United States v. Zacks,* 375 U.S. 59, 69, 84 S.Ct. 178, 11 L.Ed.2d 128 (1963) (Harlan, J.) (declining to follow the rule against superfluities when doing so would violate congressional intent); *Atl. Fish Spotters Ass'n v. Evans,* 321 F.3d 220, 225–26 (1st Cir.2003) (declining to follow the rule against superfluities when doing so would produce an implausible result); *In re Cool Fuel, Inc.,* 210 F.3d 999, 1004–05 (9th Cir.2000) (declining to follow the rule against superfluities when doing so would violate Congress' intent); *Condec Corp. v. Farley,* 578 F.Supp. 85, 88 (S.D.N.Y.1983) ("While we agree with the

general proposition that, in statutory construction, '[e]very word is to be given effect,' ... the rule is not inflexible."); *see also Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228–29, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008) (Kennedy, J., dissenting) (cautioning against "wooden reliance" on the rules of statutory construction); *Hoffman v. Palmer*, 129 F.2d 976, 985 (2d Cir.1942) (noting that the rules of statutory construction are "not inflexible"). Section 1681t(b)(1)(F) cannot reasonably be construed in a way that avoids rendering § 1681h(e)'s furnisher-liability clause superfluous. Although the superfluity problem is a mark against the total-preemption approach, it is not fatal to it, especially considering that § 1681t(b)(1)(F) was enacted over 25 years after § 1681h(e).

It also should be noted that there is ostensibly another superfluity problem with the total-preemption approach. In 2003 Congress amended the FCRA to address the growing problem of identity theft. One of the amendments, § 1681s–2(a)(6), requires furnishers to comply with certain procedures when notified of a possible identity theft. Another one of the amendments, § 1681t(b)(5)(H), preempts state-law claims "with respect to the conduct required by the specific provisions of § 1681s–2(a)(6)." The difficulty is that § 1681s–2(a)(6) deals with the responsibilities of furnishers, and so if § 1681t(b)(1)(F) already preempts all state-law claims against furnishers, § 1681t(b)(5)(H) is unnecessary—it does nothing that § 1681t(b)(1)(F) doesn't already do. Thus one student commentator has argued that the addition of § 1681t(b)(5)(H) "supports the interpretation that [§ 1681t(b)(1)(F)] does not preempt every state law affecting furnishers." Jill A. Conrad, Note, *Preemption Under the Fair Credit Reporting Act*, 25 Ann. Rev. Banking & Fin. L. 579, 605 (2006) (embracing the statutory approach).

There is a better explanation, though. Recall that § 1681t(b)(1)(F) exempts two state statutes from its preemptive reach. Section 1681t(b)(5)(H), in contrast, preempts *all* state-law claims relating to conduct required by § 1681s–2(a)(6), even claims that are not preempted under § 1681t(b)(1)(F). Section 1681t(b)(5)(H) thus is not superfluous, because it does something that § 1681t(b)(1)(F) does not do. This understanding of § 1681t(b)(5)(H) is supported by the legislative history, *see* 123 Cong. Rec. H8122–02 (2003), and avoids finding a superfluity problem where one does not exist.

In sum, the total-preemption approach is the correct reading of the statutes.

## V. Conclusion

Mr. Carruthers has no claim against Honda because the federal Fair Credit Reporting Act does not create a private right of action against a furnisher of credit information in these circumstances and because the Act preempts the claims Mr. Carruthers otherwise would have under state law. Accordingly,

IT IS ORDERED:

1. The motion to dismiss (document 3) is GRANTED.

2. Leave to amend, as requested in the response to the motion to dismiss, is GRANTED. Mr. Carruthers may file an amended complaint by June 22, 2010.