**Theodore D. JORDAN, II, Plaintiff,**

v.

**EQUIFAX INFORMATION SERVICES, LLC, et al., Defendants.**

**No. CIV.A. 1:04–CV–1451.**

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 18, 2006.

Lisa Dionne Wright, Law Office of Lisa D. Wright, Atlanta, GA, for Plaintiff.

John J. Friedline, Kilpatrick Stockton, Thomas V. Keough, Withrow McQuade & Olsen, James William Martin, Simpson Law Offices, Stephanie J. Malbrough, Jones Day, Atlanta, GA, for Defendants.

## *ORDER*

HUNT, District Judge.

Before the Court are two motions for summary judgment, one filed by Defendant Equifax Information Services, LLC's ("Equifax") [103] and one filed by Defendants Sallie Mae, Inc. ("Sallie Mae") and SLM Financial Corporation ("SLM") [104]. Also before the Court is the parties' joint motion to seal the affidavit of Kathy Ramos [101], and a motion for an extension of the page limitations filed by Sallie Mae and SLM [103].

## BACKGROUND [1]

Defendant SLM is a servicer of educational and mortgage loans nationwide.

---

1. Because this case is before the Court on Defendants' motions for summary judgment, the Court has viewed the facts in the light most favorable to Plaintiff, the non-movant.

On June 10, 2002, SLM received an application for a loan in the name of "Theodore Jordan." The application indicated that Theodore Jordan was seeking financing for an educational program at the Ding King Training Institute beginning June 24, 2002. After verifying the purpose of the loan, SLM funded it by paying Ding King $17,600 for the course.

According to the Complaint, the identifying information used by the person who requested the loan is that of Plaintiff Theodore Jordan, II. Mr. Jordan, however, did not apply for the loan and apparently was the victim of identity theft.[2]

When the Ding King loan was not timely repaid, SLM began collection efforts and reported the debt to various credit reporting agencies, including Defendant Equifax. Because the loan had been taken out using Plaintiff's identifying information, it appeared on Plaintiff's Equifax credit report.

In September 2002, having discovered that the Ding King loan was being reported on his credit report, Plaintiff called Equifax's automated telephone system to request a current disclosure of his credit file and to add a fraud statement.

In November 2002, Plaintiff contacted SLM by telephone and advised SLM that he had been the victim of identity theft. SLM instructed Plaintiff to provide it with a copy of a police report concerning his allegations.

On December 2, 2002, Mr. Jordan notified Equifax that he disputed several accounts appearing on the credit report, including the SLM student loan account which was identified as account number 210*. Equifax promptly contacted SLM regarding the dispute by sending an automated consumer dispute verification form (ACDV). Three days later, on December 5, 2002, SLM responded to Equifax's ACDV and verified the account as reported on Plaintiff's credit history.[3]

On December 18 or 19, 2002, Plaintiff faxed a copy of a police report to SLM. On January 9, 2003, Plaintiff mailed an affidavit and the police report to "a Sallie Mae address" in Waltham, Massachusetts. The letter later was returned to Plaintiff as "Not Deliverable As Addressed—Unable to Forward."

On January 16, 2003, Mr Jordan again contacted Equifax to dispute the Ding King loan, and this time he provided a fraud affidavit and the police report. That same day, Equifax sent SLM an ACDV advising SLM of the fraud claim. In response, SLM instructed Equifax to delete account number 210* from Mr. Jordan's credit file. Equifax complied, and took the additional step of suppressing the account to prevent its reappearance. Equifax notified Mr. Jordan of these actions on January 17, 2003. Account number 210* never reappeared on Mr. Jordan's credit report; unfortunately, as discussed below, the same debt later resurfaced under a different account number.

In April 2003, SLM transferred the Ding King loan to its affiliate, Sallie Mae, a third party servicer of educational loans. In effecting the transfer, Sallie Mae assigned the loan a new account number, and the notation that there was a fraud allegation associated with the account was some-

---

See *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir.1993).

**2.** For purposes of these motions, the Court has accepted Plaintiff's claim that he did not apply for the loan and did not attend the Ding King course. The Court notes, however, that at some point, SLM confirmed that someone identified as Theodore Jordan attended and completed the curriculum for which the educational loan was obtained.

**3.** SLM denies receiving this ACDV, and it denies verifying the account. SLM claims that it received the first ACDV regarding this account from Equifax on January 17, 2003.

how deleted. After the transfer, Sallie Mae reported to the credit reporting agencies that the Ding King loan was "charged off," and it again appeared on Plaintiff's credit report. This time, however, Mr. Jordan's social security number was the identifying account number (254*), rather than the previous 210* account number.

A few months later, Mr. Jordan received a copy of his Equifax credit report dated June 4, 2003, at which time he discovered that the Ding King loan was again listed on his report. On June 17, 2003, Mr. Jordan contacted Equifax and reported that the Sallie Mae debt associated with account number 254* was fraudulent, and he provided documentation, including the police report, to support his claim. In response, Equifax deleted the account from the file and tried to suppress the account, but for an unknown reason, these efforts failed.[4] On June 23, 2003, Equifax sent a notice to Sallie Mae that the account was being deleted from Plaintiff's credit file based on the police report that Equifax received from Plaintiff. Equifax, however, did not send Sallie Mae a copy of the police report or Mr. Jordan's other documentation.

On October 1, 2003, Equifax provided Mr. Jordan with a copy of his credit re-

port, but Mr. Jordan did not realize that the Ding King loan was on it.[5] Thus, unnoticed by either Mr. Jordan or Equifax, the fraudulent account continued to appear on Mr. Jordan's credit report for a number of months.

In April 2004, Mr. Jordan applied for a mortgage with Homebanc Mortgage ("Homebanc"). On April 13, 2004, Homebanc received a copy of Mr. Jordan's credit report issued by Equifax, and Homebanc employee Toni Pender noticed the Sallie Mae account.[6] According to Ms. Pender, she discussed the situation with Mr. Jordan and informed him that he would have to provide proof that either the loans were not his or that they had been paid off in order for the Homebanc loan to close. After Plaintiff wrote to Homebanc and explained that he was working with Equifax to have the account information removed from his credit report, the loan closed on time, and at the terms that Plaintiff wanted.

On May 24, 2004, Mr. Jordan filed this action pursuant to the Fair Credit Reporting Act (the "FCRA") against Equifax, SLM, and Sallie Mae.[7] He seeks recovery against Equifax under 15 U.S.C. § 1681e(b), which requires that credit reporting agencies have in place reasonable

---

**4.** It is unclear to the Court exactly what happened, but Equifax states, "Equifax opened a computer record to investigate the dispute. Based on the documents provided, Equifax marked the account to be suppressed. Due to an error on the tradeline, however, the code could not be applied before the data was uploaded to the live credit database. As such, the representative made a request to have the code applied directly to the database. It is unknown if the request was not received or the code was misapplied." Def. Br. at 8.

**5.** According to Mr. Jordan, he did not remember receiving that report. He testified that it was possible that he received the October 1, 2003 and simply missed the Sallie Mae account.

**6.** In its reply brief, Equifax states that there is "no evidence that an Equifax credit report was actually published." The Court notes that not only is this argument raised for the first time in the reply brief, but it is also flatly contradicted by the evidence. Toni Pender testified that after receiving Mr. Jordan's online application, she ordered his credit report, and the Sallie Mae account showed up as a "charge off" on a credit report issued by Equifax. *See* Pender Depo. at 55–56.

**7.** He also sued Experian Information Solutions, Inc., but Experian was dismissed from the case [73].

procedures to assure maximum possible accuracy of the information prepared for third parties, and under 15 U.S.C. § 1681i(a), which requires that credit reporting agencies make reasonable efforts to reinvestigate the accuracy of disputed information and to have in place reasonable procedures to prevent the reappearance of deleted information. As for SLM and Sallie Mae (collectively "the Loan Servicers"), Plaintiff claims that they violated 15 USC 1681s–2(b) by failing to respond adequately to his request for reinvestigation. Additionally, Plaintiff seeks recovery against the Loan Servicers for defamation and negligence under state law. Through their motions for summary judgment, Defendants argue that they are entitled to judgment as a matter of law on all of Plaintiff's claims.

## DISCUSSION

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The nonmovant is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lob-*

by, *Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Resolving all doubts in favor of the nonmoving party, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.*

### I. Willfulness

Both Equifax and the Loan Servicers argue that the problems about which Plaintiff complains were the result of human error, not willful, intentional conduct. This issue is important because if Defendants are correct, Plaintiff is not entitled to punitive damages, and his state law claims against the Loan Servicers are preempted.

■■■ The FCRA authorizes the imposition of punitive damages against any person that "willfully" fails to comply with any requirement imposed under the FCRA. *See* 15 U.S.C. § 1681n(a)(2). Defendants argue that they cannot be liable under § 1681n because there was no proof they acted willfully. "To show willful noncompliance with the FCRA, the Plaintiff must show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive." *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998) (internal quotations and citations omitted). A willful violation "requires knowing and intentional commission of an act the defendant knows to violate the law." *Phillips v. Grendahl*, 312 F.3d 357, 370 (8th Cir.2002). There is no evidence in the record to support a finding of willfulness on the part of any of the defendants in this case.

■■■ The undisputed evidence reveals that Equifax provided Plaintiff's credit report on request, did not conceal information about the report, investigated the disputed account, and attempted to resolve the dispute. While a "glitch" in Equifax's

system allowed the account to reappear, there is no evidence of any intention to thwart Plaintiff's right to have inaccurate information removed from his report.

■ Similarly, in January 2003, in response to an ACDV received from Equifax, SLM instructed Equifax to delete the account from Plaintiff's credit file. Although Plaintiff has presented evidence that SLM should have acted in early December, the one month delay is insufficient, as a matter of law, to support a finding of willfulness. *See Stevenson v. TRW, Inc.*, 987 F.2d 288, 293–94 (5th Cir.1993) (finding no willfulness where the agency was negligent and slow to correct information). Moreover, the transfer of servicing responsibilities in April 2003 from SLM to Sallie Mae resulted in the assignment of a new account number, which was one of the causes of the continued reporting of the loan. The evidence is clear that the assignment of the new account number was done for a legitimate business purpose, not to interfere with Plaintiff's rights.

In sum, even when viewed in the light most favorable to Plaintiff, there is no evidence in the record to support an inference that Equifax, SLM, or Sallie Mae willfully violated the FCRA. Accordingly, Plaintiff has failed to present competent evidence to demonstrate that there is a genuine issue for trial on the question of willfulness. *Compare Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834 (8th Cir.1976) (finding that punitive damages were proper when a consumer reporting agency concealed some or all of a credit report from a consumer); *and DiPrinzio v. MBNA Am. Bank, N.A.*, 2005 U.S. Dist. LEXIS 18002 at *25–26 (denying summary judgment on the issue of willfulness where the evidence showed that the defendant, among other things, never investigated the plaintiff's dispute, never marked the account as disputed, and never reported the dispute to the credit agencies); *with Pin-*

*ner v. Schmidt*, 805 F.2d 1258, 1263 (holding that the consumer reporting agency had not acted willfully in noncompliance although it had failed to investigate adequately and failed to correct inaccurate information in the plaintiff's credit report); *Morris v. Credit Bureau of Cincinnati, Inc.*, 563 F.Supp. 962, 969 (S.D.Ohio 1983) (finding no willful violation where the credit bureau was negligent in allowing deleted information to reappear on the credit report but where the bureau had exhibited no ill will toward the plaintiff and had acted to fix the problem). Therefore, summary judgment is GRANTED on Plaintiff's punitive damages claims.

■ Additionally, summary judgment is also warranted on Plaintiff's state law claims. The FCRA preempts defamation and negligent reporting claims brought pursuant to state law unless the plaintiff can prove that the defendant acted with malice or with a willful intent to injure him. *See* 15 U.S.C. § 1681h(e). Because Mr. Jordan has pointed to no evidence supporting an inference that the Loan Servicers reported information with malice or willful intent toward him, his state law defamation and negligence claims are preempted by the FCRA. Summary judgment on these claims, therefore, is GRANTED.

## II. Damages

Both Equifax and the Loan Servicers argue that they are entitled to summary judgment on Plaintiff's FCRA claims because Plaintiff has not suffered any damages. A successful plaintiff in an action brought pursuant to the FCRA may recover his actual damages sustained as a result of the credit agency's negligent failure to comply with the law, along with the costs of the action and reasonable attorneys fees. *See* 15 U.S.C. § 1681o. Damages are an element of the claim, and without

evidence of damages, summary judgment is appropriate. *See Quinn v. Experian Solutions*, 2004 U.S. Dist. LEXIS 4812 at *20 (granting summary judgment where there was no evidence that Plaintiff suffered any damages). Seeking to meet his burden of proving actual damages sustained as a result of Defendants' conduct, Plaintiff offers three types of damages: (1) damages for emotional distress and mental anguish; (2) out-of-pocket expenses incurred in communicating with Defendants, such as the cost of sending faxes and mailing letters to Defendants; and (3) damages based on the denial of credit. Defendants take issue with each of these categories, but the Court need address only the first category in order to resolve this dispute.

◼ Actual damages under the FCRA may include damages for humiliation or mental distress, even if the consumer has suffered no out-of-pocket losses. *See Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1332–33 (9th Cir.1995) (permitting FCRA damages based on claims of emotional distress only); *Moore v. Equifax Info. Servs. LLC*, 333 F.Supp.2d 1360, 1365 (N.D.Ga.2004) (Shoob, J.) (finding summary judgment was precluded based on Plaintiff's testimony that he suffered humiliation and embarrassment as a result of Equifax's inaccurate credit report); *see Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir.1995) (holding that a credit denial is not necessary to make out a prima facie case pursuant to 15 U.S.C. § 1681e(b); inaccuracies in the credit report alone are sufficient to justify an award of damages for the embarrassment

stemming therefrom); *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 151 (5th Cir.1983) (noting that actual damages include humiliation or mental distress, even if the consumer has suffered no out-of-pocket losses).

◼ Here, Plaintiff claims to have suffered emotional distress damages, including embarrassment, frustration, anger, anxiety, and humiliation as a result of Defendants' violations of the FCRA. Among other evidence, Plaintiff has provided his own testimony as well as that of Homebanc loan officer Pender that he was upset, frustrated, embarrassed, angered, and humiliated as a result of the Ding King loan continually appearing on his credit report. Based on this evidence, the Court cannot say, as a matter of law, that Plaintiff is not entitled to recover damages for emotional distress. Mr. Jordan has presented sufficient evidence to show that he suffered at least a minimal amount of actual damages as a result of Defendants' conduct. Thus, to the extent that Defendants argue lack of damages as a basis for summary judgment, the Court finds these arguments without merit.[8]

## III. Plaintiff's claims

### A. Claims against Equifax

◼ Section 1681e of the FCRA is titled "Compliance Procedures" and addresses various standards to which credit reporting agencies must adhere. *See generally* 15 U.S.C. § 1681e. Subsection (b) addresses the issue of accuracy of credit reports:

---

8. To the extent that Plaintiff's claimed out-of-pocket expenses (such as the cost of postage and sending faxes) were incurred in order to notify Defendants of inaccurate credit information, they cannot be compensable as "actual damages" for a violation of the FCRA. *See Casella v. Equifax Credit Info. Services*, 56 F.3d 469, 474 (2nd Cir.1995) (holding that pre-litigation expenses associated with sending letters to the credit reporting agency were not recoverable under the FCRA because they served merely to put the agency on notice of the incorrect information).

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b). The FCRA also requires that reporting agencies have procedures in place to prevent the reappearance of incorrect information:

A consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph ...

15 U.S.C. § 1681i(a)(5)(C). A credit reporting agency is not liable for reporting inaccurate information, so long as the agency follows reasonable procedures to prevent such an occurrence. *See, e.g., Spence v. TRW, Inc.,* 92 F.3d 380, 381 (6th Cir.1996); *Hauser v. Equifax, Inc.,* 602 F.2d 811, 814–15 (8th Cir.1979). Stated another way, the FCRA "recognizes the reality of unavoidable mistakes and imposes no liability for inaccuracies when an agency has followed reasonable procedures." *Jones v. Credit Bureau of Garden City, Inc.,* 703 F.Supp. 897, 901 (D.Kan. 1988). In its motion for summary judgment, Equifax argues that its procedures were reasonable, and the problem with Mr. Jordan's report was due to a "simple mistake."

■ To make out a claim for violation of these sections, a plaintiff must establish four elements: (1) the credit report contained inaccurate information; (2) the inaccuracy resulted from the agency's failure to follow reasonable procedures; (3) he suffered damages; and (4) the injury was caused by the inaccurate information. *See Philbin v. Trans Union Corp.,* 101 F.3d 957, 963 (3d Cir.1996). Here, Equifax does not dispute the fact that Mr. Jordan's credit report contained inaccurate informa-

tion. Rather, it argues that its procedures for ensuring accuracy were reasonable as a matter of law and that its reporting of the Ding King loan did not cause Plaintiff to suffer any injury. The Court has already concluded that Plaintiff has presented sufficient evidence to preclude summary judgment on the issue of injury and damages; thus, the only question remaining for the Court to determine on this claim is whether there is a fact issue as to the reasonableness of Equifax's procedures.

■ Generally, the determination of reasonableness of reporting agencies' procedures is a factual question for the jury, even when the underlying facts are undisputed. *See Crabill v. Trans Union, L.L.C.,* 259 F.3d 662, 664 (7th Cir.2001). Thus, summary judgment can be granted only if the defendant's procedures are unquestionably reasonable. *Id.* (noting that continued confusion between reports of two consumers after receiving notice might be viewed as a failure to maintain reasonable procedures).

In its motion for summary judgment, Equifax lays out the procedures it employs to ensure accuracy of its data, which include procedures to verify the disputed information by contacting the original source of the information. Information that cannot be verified is suppressed so that it does not reappear, even if the source continues to send the same data. A computer code, or any revisions to the account, are recorded in the investigation record and uploaded into the main credit database to effect the requested action. Additionally, Equifax has a procedure to prevent the reappearance of deleted data:

A computer code is applied to the tradeline so that the information no longer appears in any report, but remains behind the scenes to block attempts by the source to continue reporting it. This suppression code was applied to account no. 210* and has prevented that ac-

count's reappearance. The same code was scheduled to be applied to account no. 245*, but due to a glitch, it did not initially take.

Def. Br. [103–1] at 16.

Clearly, Equifax has some procedures in place to address inaccuracies in its information; those procedures worked well in initially removing the account from Mr. Jordan's file. The procedures, however, were not effective in ensuring that the account, identified by the second account number, was permanently removed. Because an unexplained "glitch" caused the disputed information to be reported on Plaintiff's credit report, the Court cannot say that Equifax's procedures were unquestionably reasonable. Therefore, summary judgment on Plaintiff's claim that Equifax negligently violated the FCRA is DENIED.

## B. Claims against the Loan Servicers

■ The FCRA requires that, upon receipt of a notice of dispute from a credit reporting agency, a furnisher of information (such as the Loan Servicers) is required to conduct an investigation, review relevant information provided by the credit reporting agency, report the results of the investigation, and, in the event the investigation determines that the information is either incomplete or inaccurate, report those results not only to the specific agency, but to all agencies to whom the furnisher reports such information. 15 U.S.C. § 1681s–2(b)(1)(A)–(D).

In his Complaint, Plaintiff claims that the Loan Servicers violated 15 USC 1681s–2(b) by continuing to report the Ding King loan after they became aware of the fraud allegations. In their motion for summary judgment, the Loan Servicers argue, in addition to the arguments discussed above

concerning willfulness and damages, that they did not violate the FCRA because they acted reasonably and non-negligently. They argue that their "inconsistent responses" to the various reports concerning the account constitute "human error, not negligent noncompliance under Section 1681s–2(b)." [9] The Loan Servicers, however, provide no legal support for this distinction between human error and negligence.

Plaintiff has presented evidence that in transferring the account, neither SLM nor Sallie Mae ensured that the fraud notation was transferred along with the account. Additionally, it is not clear that Sallie Mae acted reasonably in changing the account numbers. Finally, the Court has considered the fact that even after being notified of the problem, Sallie Mae continued to report the loan as a "charge off." This evidence is sufficient to create a fact issue with respect to SLM and Sallie Mae's alleged negligent non-compliance with the FCRA. Therefore, summary judgment on Plaintiff's claim that the Loan Servicers negligently violated the FCRA is DENIED.

## CONCLUSION

Equifax's motion for summary judgment [103] is GRANTED IN PART and DENIED IN PART. The motion for summary judgment filed by Sallie Mae and SLM [104] is GRANTED IN PART and DENIED IN PART. The motion to seal the affidavit of Kathy Ramos [101] is GRANTED AS UNOPPOSED. Sallie Mae and SLM's motion for an extension of the page limitations [103] is summarily GRANTED.

---

9. In response to an ACDV from Experian in late January 2003, SLM reported that the account was "verified as reported," while in

response to the ACDV (regarding the same account) from Equifax dated January 17, 2003, it instructed Equifax to delete the item.