Mary John SPENCER, Plaintiff,

v.

NATIONAL CITY MORTGAGE, d/b/a PNC Mortgage, Defendant.

Civil Action File No. 1:10–cv–3532–TCB–JFK.

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 8, 2011.

Holly Geerdes, Geerdes & Kim, Roswell, GA, for Plaintiff.

Gary C. Tepper, Jonathan C. Lippert, Ballard Spahr Andrews & Ingersoll, Washington, DC, Charley Floyd Brown, Ballard Spahr LLP, Atlanta, GA, for Defendant.

### ORDER

TIMOTHY C. BATTEN, SR., District Judge.

Before the Court is Magistrate Judge King's report and recommendation (the "R & R") [16], which recommends granting in part and denying in part Defendant's partial motion to dismiss [8]. For the reasons that follow, the Court will adopt the R & R.

## I. Background

### A. Factual Background

In April 2007, Plaintiff Mary John Spencer obtained a home-improvement loan of $117,000 from Defendant National City Mortgage, d/b/a PNC Mortgage ("PNC"). After closing, PNC notified Spencer that the original executed loan documents had been lost. Although Spencer made and continued to make timely monthly mortgage payments on the loan, PNC sent Spencer late notices beginning in May or June 2007 and continuing thereafter. Spencer gave PNC information (such as the dates of her payments and the check numbers of her checks that were cashed by PNC) indicating that her account was not delinquent. Nevertheless, PNC stated that it was holding her account in suspense "until her account was properly set up due to loss of the loan documents and despite cashing each and every monthly payment made by Plaintiff."

In the fall of 2007, Spencer was notified by her bank and by American Express that PNC was reporting to the credit reporting agencies ("CRAs") that her account was delinquent. Spencer again sent PNC copies of the checks evidencing her timely mortgage payments, and she notified PNC of the false reporting to the CRAs and demanded correction. PNC refused to acknowledge its mistake and refused to correct its erroneous credit reporting.

In February 2008, Spencer filed suit against PNC for, among other things, false

reporting to the CRAs. In exchange for dismissal of Spencer's lawsuit, PNC agreed to a loan modification, which was executed in September 2008. Once again, however, PNC lost the original loan modification documents, and it continued to hold Spencer's account in suspense and to report to the CRAs that Spencer was delinquent in her payments. Spencer repeatedly contacted PNC and demanded that it stop its false negative reporting, noting that her business depended on her credit rating. PNC did not correct its previous false negative reports to the CRAs, and its false reporting continued.

As a result of PNC's false reports to the CRAs, American Express declined Spencer's business credit card in December 2008,[1] and it thereafter reduced her line of credit from $120,000 to $10,000. In January 2009, PNC sent an apology letter to Spencer, but again failed to correct its mistakes with the CRAs. Over the next four months, Spencer continued to send proof of mortgage payments to PNC and to American Express, but American Express would not reinstate the original line of credit because PNC never corrected its false credit reports.

In 2009, Spencer sought another loan modification in lieu of suing PNC, and in September 2009, PNC, through Sarah Greggerson, entered into a forbearance agreement with Spencer for both loans with an agreed upon amount to be paid monthly on the mortgage beginning in November 2009 and continuing for five months pending finalization of the refinancing agreement. Spencer alleges that she paid the amount agreed upon but that PNC continued to report delinquent payments on the loan. She contacted Greggerson, who stated that she corrected the error and sent Spencer an apology letter, but the letter listed only one loan even though the forbearance agreement covered both loans. PNC apologized again in December 2009, but its false negative reporting continued. In March 2010, PNC requested an additional month on the forbearance to finalize the refinancing, to which Spencer agreed after being assured that there would be no other problems with the refinancing. In April, however, PNC notified Spencer that it would not give her the agreed-upon refinancing.

## B. Procedural Background

### 1. The Lawsuit and PNC's Motion to Dismiss

Spencer filed suit against PNC on October 29, 2010. In her amended complaint, which she filed on January 18, 2011, Spencer asserts claims against PNC for violation of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s–2(b) (count I),[2] as well as state-law claims for breach of contract (count II), defamation (count III), and intentional infliction of

---

1. Spencer was in Las Vegas preparing for a trade show when her card was declined. She alleges that as a result of her card being declined she had to incur additional expenses that she would not have otherwise incurred and that her personal and business credibility were damaged because she was forced to request additional funds from customers and suppliers to complete preparations for the trade show.

2. Spencer alleged that she is a "consumer," as defined in § 1681a(c), and that PNC is a "furnisher," as used in § 1681s–2, but she did not cite a specific section of the FCRA that PNC allegedly violated. The magistrate judge concluded that her allegations fell within the scope of 15 U.S.C. § 1681s–2(a), which requires furnishers to submit accurate information to CRAs, and § 1681s–2(b), which requires furnishers to investigate the accuracy of information provided to CRAs upon receiving notice of a dispute. However, only § 1681s–2(b) is enforceable through a private right of action, so that is the section on which count I is interpreted to rely.

emotional distress (count IV). Spencer alleges that she suffered approximately $116,997 in damages as a result of PNC's false negative reporting to the CRAs and that her damages continue to accrue. She also alleges that she has virtually lost her business as a result of PNC's conduct, causing her to suffer severe anxiety, emotional distress and depression. She seeks compensatory damages, punitive damages, plus attorneys' fees and costs.

PNC has moved to dismiss counts II through IV, arguing that § 1681t(b)(1)(F) of the FCRA preempts all state-law claims against furnishers. Spencer argues that there is a conflict between § 1681t(b)(1)(F) and another provision of the FCRA, § 1681h(e), and she asks the Court to resolve the conflict by holding that § 1681t(b)(1)(F) preempts only statutory causes of action against furnishers and that state common-law claims are not preempted if they meet the pleading requirements of § 1681h(e).

**2. The Magistrate Judge's R & R**

PNC's motion to dismiss was referred to Magistrate Judge King, who issued a non-final R & R recommending that the motion be granted in part and denied in part.

Magistrate Judge King recognized that other courts, including some in the Northern District of Georgia, have recognized the conflict between § 1681t(b)(1)(F) and § 1681h(e) and have attempted to resolve that conflict in one of three ways. First, some courts have concluded that the newer language of § 1681t(b)(1)(F) supersedes the older language of § 1681h(e), so that all state-law claims are preempted. A second group of courts has read § 1681h(e) as applying to claims that arise before a furnisher receives notice of a dispute from a CRA, while claims arising after a furnisher receives such notice are governed by § 1681t(b)(1)(F). Third, other courts have held that § 1681t(b)(1)(F) applies only to

statutory causes of action while § 1681h(e) applies to common law claims.

Magistrate Judge King ultimately did not adopt any of these three approaches. Rather, she concluded that because § 1681h(e) does not apply to this case, there is no conflict to be resolved and that § 1681t(b)(1)(F) governs. She went on to explain that under the plain language of § 1681t(b)(1)(F), count III (defamation) is preempted in its entirety, and count II (breach of contract) and count IV (intentional infliction of emotional distress) are preempted to the extent that they are based on duties or obligations arising solely out of conduct allegedly violating the FCRA. However, she held that count II is *not* preempted to the extent it is based on the breach of an express agreement between the parties and that count IV is *not* preempted to the extent that it is based on the non-preempted breach-of-contract claim. Finally, Magistrate Judge King ordered that if the R & R is adopted by this Court, Spencer must file an amended complaint removing her defamation claim and restating her remaining state-law causes of action to allege only non-preempted conduct. Both Spencer and PNC filed objections to the R & R.

**II. Analysis**

After conducting a careful and complete review of a magistrate judge's findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1)(C); *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir.1982), *cert. denied*, 459 U.S. 1112, 103 S.Ct. 744, 74 L.Ed.2d 964 (1983). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district judge

must "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir.1990). Those portions of a report and recommendation to which an objection is not asserted are reviewed for plain error. *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir.1983).

The Court has conducted a careful review of the report and recommendation and both parties' objections thereto. Having done so, and as explained below in greater detail, the Court finds that Magistrate Judge King's factual and legal conclusions are correct and that neither party's objections have merit.

## A. History of, and Amendments to, the FCRA

"The FCRA is a comprehensive statutory scheme designed to regulate the consumer reporting industry." *Ross v. FDIC*, 625 F.3d 808, 812 (4th Cir.2010). A brief discussion of the FCRA, as originally enacted and as amended by the Consumer Credit Reporting Reform Act of 1996 ("CCRRA"), is useful to understand the issues raised by PNC's motion, specifically as it relates to (1) obligations imposed on furnishers of information to CRAs; (2) the "limitation of liability" provision contained in § 1681h(e); and (3) the FCRA's preemption provisions.

### 1. Furnishers' Obligations Under the FCRA

When enacted in 1970, the FCRA did not impose any duties on furnishers of information to CRAs.[3] The CCRRA, however, expanded the scope of the FCRA and imposed two distinct obligations on furnishers of information to CRAs. *See* 15 U.S.C. § 1681s–2. First, under § 1681s–

2(a), furnishers have a duty to provide accurate information to CRAs. Second, under § 1681s–2(b), furnishers must investigate information disputed by a consumer after receiving notice of a dispute from a CRA.

### 2. Section 1681h(e)'s Limitation of Liability

The CCRRA retained the "limitation of liability" contained in the originally enacted § 1681h(e), but it added the following italicized language:

Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, *or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report* except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (emphasis added). "Congress intended this section's general bar on defamation, invasion of privacy, and negligence actions [against furnishers] to be the quid pro quo for providing full disclosure under the FCRA." *Ross*, 625 F.3d at 814. Traditionally, § 1681h(e) was read as providing a "qualified immunity" defense to any such state-law claims. *See, e.g., Cousin v. Trans Union Corp.*, 246 F.3d 359, 375 (5th Cir.2001) ("Under § 1681h(e), [CRAs] are generally qualified-

---

**3.** Although the term "furnisher" is not defined in the FCRA, PNC does not dispute that it is a "furnisher" of information to CRAs for purposes of this case.

ly immune from state law claims for defamation unless they involve malice or willful intent to injure."); *Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir.1980) ("Section 1681h(e) is recognized as providing qualified immunity for [CRAs]. . . ."). *See generally* Mark H. Tyson, *State Law Furnisher Liability Claims and the FCRA—the State of Confusion*, 63 CONSUMER FIN. L.Q. REP. 19, 22–23 (2009) (discussing the distinction between qualified immunity and preemption and arguing that § 1681h(e) is properly regarded as a qualified immunity provision, not a preemption provision).

### 3. Section 1681t's Preemption of State–Law Claims

Finally, as originally enacted, the FCRA generally permitted state regulation of the consumer reporting industry. With very few exceptions, state laws were only preempted to the extent they were "inconsistent" with the federal act. *See* 15 U.S.C. § 1681t (1970). The CCRRA expanded the scope of the FCRA's preemption of state laws with respect to claims against furnishers, adding the following language to the FCRA:

> No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies.

15 U.S.C. § 1681t(b)(1)(F). "The purpose of this new subsection was, in part, to avoid a patchwork system of conflicting regulations." *Ross*, 625 F.3d at 813 (internal quotations omitted).

### B. The Potential Conflict Between Section 1681h(e) and Section 1681t(b)(1)(F)

The two FCRA provisions often relied on to defeat state-law claims against fur-nishers of information are § 1681t(b)(1)(F) and § 1681h(e). As Chief Judge Carnes explained, numerous courts have identified an apparent conflict between these two statutes:

> These statutes overlap each other in that each provides some protection to furnishers of information. However, they also appear to contradict each other in that § 1681t[ (b)(1)(F) ] prohibits state causes of action against furnishers of information, while § 1681h(e) allows consumers to sue such entities for defamation, a state cause of action, if the defamatory statement was made with malice or willful intent to injure.

*Neal v. Equifax Credit Info. Servs., Inc.*, No. 1:03–cv–0761–JEC, 2004 WL 5238126, at *5 (N.D.Ga. Mar. 11, 2004) (hereinafter *"Neal I "*).

### C. The Three Common Approaches to Resolving the Conflict

Courts that have recognized the conflict identified above have generally taken one of three approaches toward resolving it. These are known as the "total preemption" approach, the "temporal" approach, and the "statutory" approach.

#### 1. Total Preemption

Some courts have determined that § 1681t(b)(1)(F) preempts both statutory and common-law causes of action arising under state law. Among those courts that have adopted this so-called "total preemption" approach, some have concluded that the newer language of § 1681t(b)(1)(F) supersedes the older language of § 1681h(e)—in other words, that the adoption of § 1681t(b)(1)(F) amounted to an implied repeal of the limited liability granted under § 1681h(e). Others within this group have held that § 1681t(b)(1)(F) acts as a backstop to the older statute, concluding that "[a]ll state law claims that do not

allege willfulness are preempted by § 1681h(e), and any surviving claims alleging willfulness are preempted under § 1681t(b)(1)(F) if they involve a subject-matter regulated under § 1681s–2." *Westbrooks v. Fifth Third Bank*, No. 3:05–0664, 2005 WL 3240614, at *6 (M.D.Tenn. Nov. 30, 2005). Still other courts have concluded that the more specific language in § 1681t(b)(1)(F) should govern over the catch-all language in § 1681h(e), and some other courts have applied § 1681t(b)(1)(F) without even addressing its relationship to § 1681h(e).

A common criticism of this approach is that it renders § 1681h(e) without meaning, violating the canon of judicial construction that statutes which are part of the same legislative scheme are intended to be read and interpreted together and that interpretations rendering one provision meaningless or superfluous are highly disfavored. Judge Evans, rejecting the total-preemption approach, explained:

> [N]othing in the 1996 amendment compels such a conclusion, and to imply Congress's intent to repeal a previously existing provision in the statute without a clear statement in the amendment to that effect is an unwieldy act of legislation that this court ought not and will not undertake.

*Johnson v. CitiMortgage, Inc.*, 351 F.Supp.2d 1368, 1374 (N.D.Ga.2004). Further supporting this criticism, one practitioner explained that the terms of the CCRRA not only fail to compel the conclusion that § 1681t(b)(1)(F) supersedes § 1681h(e), but in fact "suggest the exact opposite":

> When liability was imposed upon and preemption granted to furnishers in 1996, section 1681h(e) was also amended to expand the scope of the "limitation of liability." As such, it is inconceivable that Congress simply "overlooked" the

potential "conflict" between sections 1681h(e) and 1681t(b)(1)(F). By amending the "limitation of liability" provision at the same time it created liability and granted preemption for furnishers, Congress was clearly cognizant of both provisions and intended them to both be effective. Thus, the "total [preemption]" approach, which simply ignores section 1681h(e) by deeming it revoked by implication, cannot be an adequate solution to the "conflict."

Tyson, *State Law Furnisher Liability Claims, supra*, at 21.

At least one other practitioner, however, has observed that "[t]he criticism of total preemption seems a bit exaggerated. Preemption in § 1681t(b)(1)(F) applies only to claims against furnishers of information, which could still leave a range of operation for § 1681h(e) as it applies to claims against consumer reporting agencies and users of information." Randall D. Quarles, *Splintered District Courts Continue to Struggle with Federal Preemption of Credit–Reporting Claims*, 27 No. 3 BANKING & FIN. SERVICES POL'Y REP. 8, 10 n.22 (2008).

## 2. Temporal Approach

Other courts have adopted what is known as the "temporal" approach, under which preemption *vel non* turns on the point in time at which the wrongful conduct by a furnisher allegedly occurred: § 1681t(b)(1)(F) preempts claims based on actions taken after the furnisher receives notice of an alleged inaccuracy, while actions taken prior to the receipt of such notice are governed by § 1681h(e). The justification for this approach is that § 1681t(b)(1)(F) bars claims based on a furnisher's duties under § 1681s–2, which in turn addresses a furnisher's responsibilities after receiving notice of an alleged inaccuracy. Therefore, § 1681t(b)(1)(F) preempts only claims arising from post-notice conduct, and § 1681h(e) permits any

claims targeting pre-notice conduct if malice or willfulness are alleged.

Although this approach has the benefit of giving effect to both statutes, it has been criticized for ignoring the fact that § 1681s–2 imposes two separate duties on furnishers: paragraph (a) requires that they report accurate information in the first instance, while paragraph (b) requires that they investigate disputes after receiving notice of them. To limit the preemptory scope of § 1681t(b)(1)(F) to circumstances where notice of a dispute has been given effectively ignores the plain language of that statute, which encompasses all of a furnisher's duties by declaring that no state-law requirement or prohibition may be imposed *"with respect to any subject matter regulated under ... section 1681s–2."* (Emphasis added.)

Not only does the temporal approach fail to provide furnishers any preemption for claims arising from their responsibilities under § 1681s–2(a), but it also gives them more protection for actions taken *after* receiving notice of a dispute than for actions committed *before* such notice is given. As Chief Judge Carnes explained, "[i]t seems odd ... that Congress intended to protect furnishers of information more once they have knowledge that a consumer is disputing an item on his credit report; one would, logically, expect the opposite policy." *Neal I,* 2004 WL 5238126, at *6.

### 3. Statutory Approach

Finally, still other courts have read § 1681t(b)(1)(F) as applying only to state statutory causes of action, while § 1681h(e) applies to state common-law claims.[4] Proponents of this so-called "statutory" approach contend that § 1681h(e) is a specific statute that must govern in any conflict with the more general preemption provision in § 1681t(b)(1)(F). Furthermore, courts have found it significant that § 1681h(e) specifically mentions common-law torts and that § 1681t(b)(1)(F) explicitly references two specific state statutes addressing inaccurate or incomplete information in a credit report.[5]

Like the temporal approach, the statutory approach has the benefit of giving effect to both statutory provisions. It also avoids the effect of protecting a furnisher more for actions it takes after receiving notice of a dispute than for actions taken before it receives such notice. Persuaded by these merits, each of the judges within this district that has addressed the issue has adopted this approach to resolve the conflict between § 1681h(e) and § 1681t(b)(1)(F). *See Russell–Allgood v. Resurgent Capital Servs., L.P.,* 515 F.Supp.2d 1307, 1312 (N.D.Ga.2007) (Forrester, J.), *judgment vacated* (June 26, 2007); *Jordan v. Trans Union LLC,* 377 F.Supp.2d 1307, 1309 (N.D.Ga.2005) (Tidwell, J.); *Pinckney v. SLM Fin. Corp.,* 433

---

**4.** As Judge Duffey explained, "[j]ust because Georgia law codifies defamation, that does not bring defamation within the scope of § 1681t[ (b)(1)(F), even when read to preempt only statutory causes of action].... [O]nly state statutes that regulate the same subject matter as the FCRA—*i.e.,* state consumer protection laws—are preempted by § 1681t[ (b)(1)(F) ]." *Neal v. Equifax Info. Servs. LLC,* No. 103–cv–0761–WSD, 2005 WL 5249668, at *3 (N.D.Ga. March 4, 2005) (hereinafter *"Neal II"*).

**5.** Section 1681t(b)(1)(F) provides that its preemption provisions shall not apply to § 54A(a) of chapter 93 of the Massachusetts Annotated Laws (entitled "Procedures to ensure accuracy of information reported to consumer reporting agency; disputed information; liability") or to § 1785.25(a) of the California Civil Code (entitled "Incomplete or inaccurate information; knowledge; notification to agency; dispute as to completeness or accuracy; notice; closing of open-end credit account; delinquent accounts; investigation of dispute; liability of furnisher").

F.Supp.2d 1316, 1321 (N.D.Ga.2005) (Hunt, J.); *Johnson,* 351 F.Supp.2d at 1376 (Evans, J.); *Neal I,* 2004 WL 5238126, at *6 (Carnes, C.J.).[6]

Despite its widespread acceptance within this district, the statutory approach is not without its faults. It has been criticized as amounting to a judicial revision of § 1681t(b)(1)(F), the plain terms of which extend to any "requirement or prohibition . . . imposed under the laws of any State." The Supreme Court has held that "[a]bsent other indication, reference to a State's 'requirements' includes its common-law duties." *Riegel v. Medtronic, Inc.,* 552 U.S. 312, 324, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008); *see also Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 522, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (plurality opinion) ("common-law damages actions . . . are premised on the existence of a legal duty, and it is difficult to say that such actions do not impose 'requirements or prohibitions.'"). Because Congress is presumed to be aware of basic rules of statutory construction when legislating, critics of the statutory approach read the plain text of § 1681t(b)(1)(F) as expressing a clear Congressional intent to preclude both common-law and statutory state-law claims.

### D. A Fourth Approach: No Conflict Exists

■ As explained above, each of the three approaches to resolving a conflict is subject to its own specific criticisms. An emerging view, however, subjects all three approaches to a common criticism: that no conflict exists because of the limited scope of § 1681h(e), which does not apply to FCRA claims brought against furnishers. As one district court in this circuit explained:

> The court finds there is no ambiguity in § 1681t(b)(1)(F) on its face.... It appears to this court that § 1681h(e) should only be looked to to determine whether it conflicts with the plain language of § 1681t(b)(1)(F) if § 1681h(e) is otherwise applicable in the case. That is, this court should not undertake to resolve a theoretical conflict between statutes unless the statute which allegedly causes the conflict with the other, unambiguous, statute applies in the case.

*Knudson v. Wachovia Bank,* 513 F.Supp.2d 1255, 1259 (M.D.Ala.2007). The Fourth Circuit, the only circuit court that has addressed preemption under the FCRA, also adopted this approach. *See Ross,* 625 F.3d at 814.

Magistrate Judge King adopted this approach in her R & R, relying on the Fourth Circuit's opinion in *Ross* and on decisions of other district courts, including some within this circuit. *See, e.g., Cosmas v. Am. Express Centurion Bank,* 757 F.Supp.2d 489 (D.N.J.2010); *Sigler v. RBC Bank (USA),* 712 F.Supp.2d 1265 (M.D.Ala.2010); *Schlueter v. BellSouth Telecomms.,* 770 F.Supp.2d 1204 (N.D.Ala. 2010); *Barberan v. Nationpoint,* 706 F.Supp.2d 408 (S.D.N.Y.2010); *Knudson,* 513 F.Supp.2d 1255; *Davis v. Md. Bank,* No. 00–04191, 2002 WL 32713429 (N.D.Cal. June 19, 2002).

In *Ross,* the plaintiff, Charlene Ross, brought suit against Washington Mutual Bank ("WaMu") alleging violations of the FCRA, violations of the North Carolina Uniform Deceptive Trade Practices Act

---

**6.** Two other decisions from this district have used § 1681h(e) to preempt common-law claims against furnishers of information without discussion of the relationship or conflict between § 1681h(e) and § 1681t(b)(1)(F). *See Jordan v. Equifax Info. Servs., LLC,* 410 F.Supp.2d 1349, 1355 (N.D.Ga.2006) (Hunt, J.); *Moore v. Equifax Info. Servs., LLC,* 333 F.Supp.2d 1360, 1367 (N.D.Ga.2004) (Shoob, J.).

("NCUDTPA"), and defamation under North Carolina common law. The district court granted summary judgment to WaMu, concluding that Ross's NCUDTPA claim was expressly preempted by the plain language of § 1681t(b)(1)(F). On appeal, Ross argued that her claim was expressly authorized by § 1681h(e) because WaMu acted with "malice or willful intent to injure." Rejecting that argument, the Fourth Circuit explained:

> [T]he § 1681h(e) authorization Ross seeks involves a two-step inquiry. First, we ask whether the claim falls within the scope of § 1681h(e), which includes only claims "based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or part on the report." The second step in the analysis involves determining whether the "malice or willful intent to injure" exception to the general bar against state law actions applies.

625 F.3d at 814. Explaining that it was "unclear that Ross's contentions even fell within the scope of § 1681h(e)," the Fourth Circuit continued:

> Sections 1681g and 1681h ... apply only to CRAs. WaMu is not a CRA. Section 1681m applies only to users of consumer reports. WaMu is not a user of consumer reports vis-à-vis Ross. The final § 1681h(e) category for actions "based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report" does not appear to apply because WaMu neither used Ross's con-

sumer report nor took adverse action based on information in Ross's report or information disclosed by a user.

*Id.* Having concluded that Ross could not satisfy the requirements of the § 1681h(e) exception,[7] the court in *Ross* did not address any "conflict" between that section and § 1681t(b)(1)(F), and the plain language of the latter section preempted Ross's NCUDTPA claim.

The Court finds this emerging approach persuasive and concludes that Magistrate Judge King was correct in adopting it. Although this conclusion is a departure from that reached by other courts within this district, none of those courts had the benefit of guidance from any appellate court: the most recent northern district case involving preemption under the FCRA was decided in 2007, but the Fourth Circuit did not issue its well-reasoned opinion in *Ross* until 2010. Here, there is no allegation that PNC qualifies as a CRA or as a user of consumer reports vis-à-vis Spencer, nor does Spencer claim that PNC took adverse action against her based on information disclosed by a user. Absent such allegations, § 1681h(e), by its plain terms, is not implicated by the facts of this case, and any perceived conflict with § 1681t(b)(1)(F) is merely hypothetical. Because the former statute does not apply, the language of the latter statute should govern the question of preemption.

The scope of preemption under § 1681t(b)(1)(F) is unambiguous:

> No requirement or prohibition may be imposed under the laws of any State ... with respect to any subject matter regulated under ... section 1681s–2 of this title, relating to the responsibilities of

---

7. The court concluded that even if Ross could meet the first step of the § 1681h(e) analysis, she could not satisfy the second step, because the record did not show that WaMu acted with malice or willful intent to injure Ross.

persons who furnish information to [CRAs.]

There is no dispute that, at a minimum, § 1681t(b)(1)(F) preempts causes of action based on state statutes. But Spencer's argument that preemption under this section is limited to state statutory claims is unavailing. The U.S. Supreme Court has held that "[t]he phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules." *Cipollone*, 505 U.S. at 521, 112 S.Ct. 2608; *accord Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 106 (2d Cir.2009) (same). The Supreme Court has also recognized that "a liability award can be, indeed is designed to be, a potent method of governing conduct and controlling policy" and that state tort law can "disrupt [a] federal scheme no less than state regulatory law to the same effect." *Riegel*, 552 U.S. at 324–25, 128 S.Ct. 999 (internal quotations omitted). These decisions compel the conclusion that preemption under § 1681t(b)(1)(F) extends not only to state statutory claims, but to state common-law claims as well.

**E. The Scope of Preemption Under Section 1681t(b)(1)(F) Is Limited and Does Not Reach the Entirety of Spencer's Claims for Breach of Contract and Intentional Infliction of Emotional Distress.**

Although § 1681t(b)(1)(F)'s preemption reaches common-law causes of action, it does not preempt *all* claims of whatever nature or origin against furnishers of information to CRAs. Instead, for a claim to be preempted under § 1681t(b)(1)(F), two factors must be met: first, the "requirement or prohibition"—i.e., the legal duty giving rise to the claim—must be "imposed under the laws of any State," and second,

the state-law claim must relate to a "subject matter regulated under ... section 1681s–2." Magistrate Judge King held that the first condition was not satisfied with respect to Spencer's breach-of-contract claim and that the second condition was not satisfied with respect to Spencer's intentional-infliction-of-emotional-distress claim. The Court will address each claim in turn.

**1. Section 1681t(b)(1)(F) Does Not Preempt Spencer's Claim for Breach of an Express Agreement Between the Parties**

■ Magistrate Judge King held that the first of these conditions is not satisfied with respect to Spencer's breach of contract claim to the extent it is based on breach of an express agreement between the parties because the legal duty giving rise to such a claim is imposed not under state law, but instead by the parties themselves when they agree to the contract. This conclusion is consistent with analogous reasoning from the Supreme Court's plurality opinion in *Cipollone*, which was adopted by the Eleventh Circuit in *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1192 (11th Cir.2004). Explaining that state-law claims based on express agreements are not preempted, the Eleventh Circuit wrote:

As to [the breach of express warranty] claim, the plurality [in *Cipollone*] reasoned that "a manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." Noting the contractual nature of express warranty claims, the plurality opinion further provided that the " 'requirements' imposed by an express warranty claim are not 'imposed under State law,' but rather imposed *by the warrantor.*" Thus, "a common-law remedy for a contractual commitment voluntarily undertaken should not be re-

garded as a 'requirement ... *imposed under State law. ...'*"

*Spain,* 363 F.3d at 1198 (internal punctuation and citations omitted).

The issue before the court in *Spain* concerned a different federal statute and a claim for breach of an implied warranty, so although the court's opinion is analogous and persuasive, it is not conclusive. The only court within the Eleventh Circuit to address preemption of a breach-of-contract claim under the FCRA held that such a claim would not be preempted. *Carruthers v. Am. Honda Fin. Corp.,* 717 F.Supp.2d 1251, 1254–55 (N.D.Fla.2010) (holding further that the plaintiff's breach of contract claim, which alleged only violation of the *implied* covenant of good faith and fair dealing, was preempted). Courts in other districts have reached the same conclusion. *See, e.g., Leet v. Cellco P'ship,* 480 F.Supp.2d 422, 431 (D.Mass.2007) ("Based on analogous reasoning by the United States Supreme Court in *Cipollone* ..., the Court concludes that the breach of contract claim is not preempted [by the FCRA] and therefore survives."); *Kavicky v. Wash. Mut. Bank, F.A.,* No. 3:06cv01812, 2007 WL 1341345, at *2 (D.Conn. May 5, 2007) ("[T]he FCRA does not preempt breach of contract claims.").

This view is not universal, and some district courts have concluded that *any* state-law claim relating to conduct regulated by § 1681s–2 is preempted, even if that conduct also violated the terms of an express agreement between the parties. *See, e.g., Chungag v. Wells Fargo Bank, N.A.,* No. 10–14648, 2011 WL 672229, at *5 (E.D.Mich. Feb. 17, 2011); *Lufkin v. Capital One Bank (USA), N.A.,* No. 3:10–cv–18, 2010 WL 2813437, at *4 (E.D.Tenn. July 16, 2010); *Willey v. J.P. Morgan Chase, N.A.,* No. 09–civ–1397, 2009 WL 1938987, at *9 (S.D.N.Y. July 7, 2009); *Munson v. Countrywide Home Loans, Inc.,* No. 08–13244, 2008 WL 5381866, at *5 (E.D.Mich. Dec. 17, 2008); *Hukic v. Aurora Loan Servs., Inc.,* No. 05–c–4950, 2007 WL 2563363, at *12 (N.D.Ill. Aug. 31, 2007); *Trout v. BMW of N. Am.,* No. 2:04–cv–01466–BES–LRL, 2007 WL 602230, at *3 (D.Nev. Feb. 20, 2007); *Campbell v. Chase Manhattan Bank, USA, N.A.,* No. 02–3489, 2005 WL 1514221, at *17 (D.N.J. June 27, 2005). However, because § 1681t(b)(1)(F) prohibits only legal duties "imposed under the laws of any State," and based on the persuasive reasoning in *Cipollone* and *Spain* that requirements voluntarily assumed by contract are not imposed under state law, this Court believes that the Eleventh Circuit would likely disagree with those courts.

Accordingly, the Court agrees with Magistrate Judge King that to the extent Spencer's breach of contract claim is based on allegations that PNC breached an express agreement with Spencer, that claim is not preempted by the FCRA.

**2. Spencer's Intentional Infliction of Emotional Distress Claim Is Not Preempted to the Extent It Is Based on Conduct Not Regulated by Section 1681s–2.**

■ The magistrate judge also determined that "to the extent that Spencer's claim in Count [IV] for intentional infliction of emotional distress is based on the non-preempted breach of contract claim, ... that cause of action is not brought 'with respect to *any subject matter regulated* under ... section 1681s–2" and is therefore not preempted by § 1681t(b)(1)(F).

One slight modification to the R & R is necessary to make clear that the surviving breach-of-contract claim may be more broad than the surviving emotional-distress claim. Because the breach-of-contract claim does not arise from a "requirement or prohibition ... imposed under the

laws of any State," that claim survives to the extent that the conduct giving rise to it is the subject of an express agreement between the parties, even if that conduct is also regulated under § 1681s–2. For example, Spencer's claim that PNC breached its promise to repair her credit and to stop its false negative reporting to the CRAs would not be preempted because, although that conduct is regulated under § 1681s–2, the legal basis for the claim is voluntarily assumed, not imposed by state law. However, an emotional-distress claim based on the same conduct *would* be preempted because the legal duty giving rise to that claim is one imposed by state law and the conduct that is the subject matter of that claim is regulated under § 1681s–2. Thus, it is more precise to say that Spencer's emotional-distress claim survives preemption not necessarily to the extent it is based on her non-preempted breach-of-contract claim, but instead to the extent it is based on conduct not regulated under § 1681s–2.

The authorities cited in the R & R demonstrate that the scope of preemption of emotional-distress claims properly turns on whether the conduct giving rise to the claim is regulated by § 1681s–2, and not entirely on whether that conduct was the subject of an express agreement between the parties. *See, e.g., Chungag,* 2011 WL 672229, at *6–7 (intentional-infliction-of-emotional-distress claim was preempted only "to the extent [it was] based on Defendant's credit reporting activities"); *Davis,* 2002 WL 32713429, at *14 (FCRA did not preempt negligence claim to the extent it was based upon the allegation that one of the defendant's agents called the plaintiff a liar, which is not covered by § 1681s–2).

Therefore, when revising her emotional-distress cause of action to allege only non-preempted conduct, Spencer should take care to exclude any conduct that is regulated under § 1681s–2, even if that conduct is also alleged to be the subject of an agreement between the parties.

## III. Conclusion

For the foregoing reasons, the Court hereby ADOPTS the R & R [16]. Defendant's motion to dismiss [8] is GRANTED IN PART AND DENIED IN PART. Spencer's defamation claim (count III) is preempted in its entirety. Spencer's claim for breach of contract (count II) is preempted to the extent it arises solely out of conduct allegedly violating § 1681s–2, but it is not preempted to the extent based on allegations that PNC breached an express agreement between the parties. Finally, Spencer's claim for intentional infliction of emotional distress (count IV) is preempted to the extent the conduct giving rise to that claim is regulated under § 1681s–2 (e.g., allegations that PNC promised to repair Spencer's credit and stop its false negative reporting to CRAs), but that claim survives to the extent it is based on conduct that is not regulated under § 1681s–2 (e.g., allegations that PNC breached its promise to provide Spencer with a loan modification and/or refinancing).

It is further ORDERED that, within fourteen days from the date of this order, Spencer file an amended complaint removing her defamation claim and restating her remaining state-law causes of action to allege only non-preempted conduct.